[Nos. 8762–0–III; 9770–6–III;  Division Three.        March 12, 1991.]
10664–1–III.

THE STATE OF WASHINGTON, *Respondent*, v. BRUCE
GORDON MCALLISTER, *Appellant*.

*In the Matter of the Personal Restraint of*
BRUCE GORDON MCALLISTER, *Petitioner*.

*Phillip J. Wetzel* and *Perrizo & Wetzel,* for appellant (appointed counsel for appeal).

*Donald C. Brockett, Prosecuting Attorney,* and *Neil H. Korbas, Deputy,* for respondent.

SHIELDS, A.C.J.—Bruce McAllister was convicted of vehicular homicide. He appeals; we reverse and dismiss due to insufficiency of the evidence.

On the evening of September 16, 1986, Mr. McAllister's wife, Nancy, and her 27–year–old daughter, Garnett Shelly, drove Mrs. McAllister's 1966 Volkswagen van to Ernie's Tavern. Mrs. McAllister and Ms. Shelly had conducted a yard sale earlier that day and had used the van to move various items. Mrs. McAllister was the last person to close the van's side doors at about 4 o'clock that afternoon. Because the van was old, the side doors were difficult to secure; however, the McAllisters had not had any trouble with the doors opening during travel in the 6 years they had owned the van.

Mrs. McAllister phoned Mr. McAllister and asked him to meet them at Ernie's. As Mr. McAllister had no transportation, at approximately 7:30 p.m. a friend drove him to the tavern after work. The three remained at Ernie's until 11 p.m. While there, the McAllisters drank beer; Mr. McAllister consumed approximately 4½ glasses. Ms. Shelly drank several wine coolers.

Upon leaving the tavern, Mr. McAllister climbed into the driver's side of Mrs. McAllister's van. Mrs. McAllister and Ms. Shelly entered the van through the passenger door. Ms. Shelly crawled over the front seat and entered the back of the van. The back of the van had no seats or seatbelts. The

seats had been removed prior to the McAllisters' purchase of the van. Ms. Shelly had been a passenger and had driven the van on multiple occasions. She knew as a passenger "the only place to sit" was behind the driver's seat, so there was something "to hang on to."

As Mr. McAllister was driving home, he remembered he left his jacket at Ernie's. He turned left into a warehouse parking lot on the opposite side of the street in order to reverse the van's direction of travel, return to the tavern, and retrieve the jacket. Both Mr. and Mrs. McAllister testified they were traveling slowly when the turn was made. Mrs. McAllister testified the vehicle did not skid or fishtail, nor did the turn cause her to be thrown against the door. An eyewitness also stated it appeared the van was traveling 10 to 15 m.p.h., and the turn did not appear to put anyone in danger.

After navigating the turn, Mr. McAllister noticed the side doors of the van were open, and some restaurant grates, which were kept in the back of the van, had fallen out. He stopped the van and proceeded to enter the road to retrieve the grates, whereupon he discovered Ms. Shelly had fallen out of the van through the side doors and had hit her head on the road. Ms. Shelly died shortly thereafter. The autopsy indicated she died as a result of a blow to the back of her head.[1] Her blood alcohol level at the time of her death was .11 percent. Mr. McAllister was charged with vehicular homicide.

The jury returned a verdict of guilty. The first motion for arrest of judgment or new trial was filed April 27, 1987. This motion was apparently abandoned. Sentence and judgment were issued July 1, 1987. On July 30, Mr. McAllister filed his notice of appeal. On February 23, 1988,

---

[1] Almost immediately after Ms. Shelly fell from the van, a white 1963 or 1964 Ford Falcon swerved to avoid hitting her. An eyewitness stated the car passed extremely close to Ms. Shelly, but it sounded as if the car impacted only with metal. Although Mr. McAllister claimed the white car hit Ms. Shelly, the autopsy did not reveal injuries which would indicate she had been struck by another car. The white car left the scene shortly thereafter.

Mr. McAllister's motion to stay the proceedings pending the outcome of *State v. Ford*, 110 Wn.2d 827, 755 P.2d 806 (1988) and *State v. Brayman*, 110 Wn.2d 183, 751 P.2d 294 (1988) was granted.[2] On November 9, 1988, with another attorney, Mr. McAllister moved again for relief of judgment and for new trial. His motion was based on a contention his trial counsel was surprised at trial, because the prosecution had failed to disclose it would use Officer Winkey as an expert accident reconstruction witness in violation of CrR 4.7. Mr. McAllister contended his own expert witness would testify the police officer had reconstructed the accident improperly. A hearing on the motion was held December 20, 1988. The trial judge denied the motion, noting that defense counsel did not request additional time to rebut at trial and the motion for new trial was not timely and was not adequately supported by evidence which would show the verdict was in error. On January 12, 1989, Mr. McAllister appealed from the denial of his second motion for new trial or arrest of judgment. On March 16, 1990, Mr. McAllister filed a personal restraint petition, contending: (1) he had ineffective assistance of counsel, because the prosecution was permitted to use Officer Winkey as an expert witness; and (2) the evidence concerning the result of the Breathalyzer test should be suppressed, because he was indigent and was advised additional testing would be at his own expense. Mr. McAllister's original appeal (cause 8762-0-III), his appeal from the denial of his motion for new trial (cause 9770-6-III), and his personal restraint petition (cause 10664-1-III) have been consolidated for review.

Vehicular homicide, RCW 46.61.520, can be committed in three alternate ways. Mr. McAllister was charged with all three: (1) the driving of the vehicle while under the influence of intoxicating liquor which was the proximate

---

[2]Both cases concern the use of breath alcohol tests to prove intoxication. *Brayman* was decided in March 1988 and *Ford* was decided in June 1988.

cause of the injury to Ms. Shelly, which in turn was a proximate cause of her death; or (2) the operation of the vehicle in a reckless manner which was the proximate cause of the injury to Ms. Shelly, which in turn proximately caused her death; or (3) the operation of the vehicle with disregard for the safety of others which was the proximate cause of the injury to Ms. Shelly, which in turn proximately caused her death. Although the jury is not required to be unanimous as to a particular alternative when more than one is charged, the State must produce substantial evidence of each. *State v. Sanchez,* 42 Wn. App. 225, 232, 711 P.2d 1029 (1985), *review denied,* 105 Wn.2d 1008 (1986). Unless there is sufficient evidence as to each means by which the defendant was alleged to have committed the crime, the verdict must be set aside. *State v. Fateley,* 18 Wn. App. 99, 102, 566 P.2d 959 (1977).[3] Sufficient evidence means more than a mere scintilla of evidence; there must be that quantum of evidence necessary to establish circumstances from which the jury could reasonably infer the fact to be proved. *Fateley,* at 102.

What must be shown to support a conviction for vehicular homicide under the first alternative requires proof of more than intoxication.[4] What must be shown to support a conviction under the first alternative as the proximate cause is a combination of ordinary negligence[5]

---

[3]*Fateley* was decided under former RCW 46.61.520 which provided:

**"Negligent homicide by motor vehicle—Penalty.** (1) When the death of any person shall ensue within three years as a proximate result of injury received by the driving of any vehicle by any person while under the influence of or affected by intoxicating liquor or drugs, or by the operation of any vehicle in a reckless manner or with disregard for the safety of others, the person so operating such vehicle shall be guilty of negligent homicide by means of a motor vehicle."

[4]A person is deemed to be driving while under the influence of intoxicating liquor if the person has a blood alcohol level of .10 percent or more. RCW 46.61-.502.

[5]11 Wash. Prac., *WPIC* 90.05 (Supp. 1986) defines ordinary negligence as the failure to exercise "ordinary care": the doing of some act a reasonably careful person would not do under the same or similar circumstances or the failure to do

and intoxication while driving. *See Fateley,* at 103. Intoxication is not a factor in the second and third alternatives. What must be shown to support a conviction under the second alternative as the proximate cause is "reckless driving", which has been defined as driving "in willful or wanton disregard for the safety of persons or property . . .". RCW 46.61.500. 11 Wash. Prac., *WPIC* 90.05 (Supp. 1986) defines it as "driving in a rash or heedless manner, indifferent to the consequences." What must be shown to support a conviction under the third alternative as a proximate cause is "disregard for the safety of others", which has been defined as an aggravated kind of negligence or carelessness, falling short of recklessness, but constituting a more serious dereliction than the minor inadvertences and oversights deemed ordinary negligence. *State v. Eike,* 72 Wn.2d 760, 765–66, 435 P.2d 680 (1967). 11 Wash. Prac., *WPIC* 90.05 (Supp. 1986) defines it as driving which "by its character and the surrounding circumstances, manifests a heedless indifference to the probability that injury . . . will result . . .".

As to the first alternate means, the State's evidence of Mr. McAllister's intoxicated state was the result of two Breathalyzer tests[6] and a statement Mr. McAllister allegedly made to one of the officers in which he indicated he left the scene of the accident because he was drunk and not sober enough to handle the situation. Thus, the State established Mr. McAllister was under the influence of intoxicating liquor. However, in addition to establishing intoxication, the State had to prove Mr. McAllister was driving in a negligent manner. The testimony presented indicated Mr. McAllister's intoxication did not affect his

---

something which a reasonably careful person would have done under the same or similar circumstances. RCW 46.61.525 defines "operate in a negligent manner" as meaning "such a manner as to endanger or be likely to endanger any persons or property" and makes it a lesser included offense of operating a vehicle in a reckless manner.

[6]The results were .09 percent and .10 percent.

driving. He indicated he would have made the same turn even had he not been drinking. He claimed he was traveling at a low rate of speed, between 10 and 15 m.p.h. Other eyewitnesses corroborated this. The State's only evidence that Mr. McAllister was negligent was a tire mark which purportedly came from the Volkswagen van and the reconstruction testimony of an officer who admitted he was not an expert in the field of accident reconstruction and who did not witness the event. We find such evidence insufficient to demonstrate negligence.

Even were we to conclude the tire mark demonstrated negligence, such evidence was insufficient to establish the negligent turn was the proximate cause of Ms. Shelly's death. *See Fateley,* at 103; *see also State v. Engstrom,* 79 Wn.2d 469, 487 P.2d 205 (1971); *State v. Nerison,* 28 Wn. App. 659, 625 P.2d 735, *review denied,* 95 Wn.2d 1024 (1981); *State v. Mearns,* 7 Wn. App. 818, 502 P.2d 1228 (1972), *review denied,* 81 Wn.2d 1011 (1973). Proximate cause is defined as "a cause which in direct sequence, unbroken by any new, independent cause, produces the event complained of and without which the injury would not have happened." *State v. Gantt,* 38 Wn. App. 357, 359, 684 P.2d 1385 (1984). The testimony revealed Ms. Shelly was also intoxicated. The evidence implied the doors may have been improperly secured the last time they were closed at 4 o'clock in the afternoon by Mrs. McAllister. Evidence of a superseding negligence may be material to whether the defendant's negligence was a proximate cause of the death or whether the defendant was negligent at all. *Nerison,* at 661 n.1. When the independent intervening act of a third person was one which was not incumbent upon the defendant to have anticipated as reasonably likely to happen, then there is a break in the causal connection between the defendant's negligence and the plaintiff's injury. *Qualls v. Golden Arrow Farms, Inc.,* 47 Wn.2d 599, 602, 288 P.2d 1090 (1955). Although the State may not need to prove the absence of the defense of superseding

cause once it was raised by Mr. McAllister,[7] the State still had the unalterable burden of proving beyond a reasonable doubt every element of the crime charged. Given the evidence of the presence of a superseding cause in this case, there is a reasonable doubt Mr. McAllister's negligence, if any, was the proximate cause of Ms. Shelly's death.

As for the two other alternate means for commission of this crime, the State's only evidence of recklessness or disregard for the safety of others was, again, the tire mark purportedly made by the Volkswagen van and one officer's reconstruction of the accident based on the mark. The standard of review when determining sufficiency of the evidence is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). Viewing the evidence in a light most favorable to the State, we find it insufficient to establish the other two alternate means of committing vehicular homicide.

Because we find the evidence insufficient for conviction on his appeal on the merits, we need not address the issues raised by Mr. McAllister on denial of his motion for new trial and his personal restraint petition.

The conviction is reversed and the case dismissed.

MUNSON and THOMPSON, JJ., concur.

---

[7]*See State v. Camara*, 113 Wn.2d 631, 639, 781 P.2d 483 (1989).