IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | | |
|---|---|---|---|
| STATE OF WASHINGTON, | ) | No. 66622-3-1 | |
| Respondent, | ) | | |
| | ) | DIVISION ONE | |
| v. | ) | | |
| | ) | | |
| CHRISTOPHER MICHAEL DAILEY, | ) | PUBLISHED OPINION | |
| | ) | | |
| Appellant. | ) | FILED: May 13, 2013 | |
| | ) | | |

BECKER, J. — Christopher Dailey appeals his conviction for vehicular assault by driving under the influence. He contends that beyond the statutory elements of the crime, there is an implied element of knowledge where the driver is alleged to be under the influence of prescription drugs. The authority Dailey relies on does not establish an implied element. We affirm the conviction.

According to trial testimony, Mary Ann Bastrom was driving in Seattle on October 1, 2009, when her car was struck forcefully from behind. Bastrom's daughter who sat in the passenger seat of the car suffered a fractured vertebra. The vehicle that struck Bastrom's car was driven by Christopher Dailey. His car continued across the road and hit a telephone pole.

When Officer Brian Shaw of the Seattle Police Department arrived on the scene, he found Dailey walking around. Dailey told Shaw that he was "fine" but

that he had "blacked out." Shaw observed Dailey slurring his words and having difficulty following directions. Dailey told Shaw that he had not drunk alcohol but that he had taken prescription medications. Shaw asked to have a drug recognition expert sent to the scene to evaluate Dailey.

Trooper Lisa Mosely of the Washington State Patrol responded to this request. She evaluated Dailey and found him sluggish, disoriented, and unable to maintain his balance. She observed that his eyes were watery and bloodshot. She performed a horizontal gaze nystagmus test, which indicated Dailey was impaired. Dailey told Mosely that he was taking three prescription medications because he was recovering from significant burn injuries. Dailey also told her he had taken "meth," but not on the day of the accident.

Mosely placed Dailey under arrest for driving under the influence. She searched Dailey and located prescription drug bottles in his pocket. Mosely wrote down the names of the prescribed drugs and verified that they were prescriptions for Dailey. Then she gave the bottles back to Dailey.

The State charged Dailey with vehicular assault under RCW 46.61.522(1). This statute has three alternatives. The State must prove that the defendant's driving proximately caused substantial bodily harm to another person, and at the time, the defendant (a) drove the vehicle in a reckless manner; or (b) was under the influence of drugs; or (c) drove the vehicle with a disregard for the safety of others. The to-convict instruction set forth all three alternatives.

At trial, the State introduced evidence that two of the drugs prescribed for

2

Dailey, one for pain and the other a psychiatric medication, induce drowsiness. There was testimony that usually prescription bottles containing soporific medications bear warnings that they cause sleepiness, but there was no testimony that the bottles found in Dailey's pockets had such warnings. Dailey did not testify.

The jury convicted Dailey of vehicular assault and indicated by special interrogatory that the conviction was based on the second alternative, driving under the influence. Dailey was sentenced at the top of the standard range to 84 months. He now appeals and argues that his conviction must be reversed because both the information and the to-convict instruction omitted an essential element of the offense.

All essential elements of a crime, statutory or otherwise, must be included in a charging document to afford notice to an accused of the nature and cause of the accusation against him. State v. Kjorsvik, 117 Wn.2d 93, 101-02, 812 P.2d 86 (1991). Each element of a crime must also appear in the "to convict" instruction because it is the yardstick the jury uses to measure the evidence and determine guilt. State v. Mills, 154 Wn.2d 1, 6-7, 109 P.3d 415 (2005).

The crime of vehicular assault by driving under the influence contains four statutory elements: (1) the defendant operated or drove a vehicle, (2) while under the influence of a drug, (3) causing substantial bodily injury to another, and (4) this act occurred in the State of Washington. RCW 46.61.522(1); see also 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL

91.02 (3d ed. 2008) (restating same elements). Dailey does not dispute that the amended information and the "to convict" instruction included these statutory elements.

Dailey's argument that knowledge is an implied additional element rests entirely on his reading of Kaiser v. Suburban Transportation System, 65 Wn.2d 461, 398 P.2d 14, 401 P.2d 350 (1965). In Kaiser, a civil case, a bus passenger sustained injuries when the bus driver lost consciousness and hit a telephone pole. Kaiser, 65 Wn.2d at 463. The driver testified that he had taken his first dose of a new medical prescription on the morning of the accident, and his physician had not warned him about side effects. Kaiser, 65 Wn.2d at 463. The record included expert testimony that a warning should have been given to the driver because 20 percent of people taking the drug experience drowsiness as a side effect. Kaiser, 65 Wn.2d at 464. The plaintiff sued the bus driver and the physician. The trial court dismissed the physician and directed a verdict against the bus driver. The Supreme Court reversed both rulings and granted a new trial. As to the driver, the court noted that a directed verdict is appropriate "only when the court can say that there is no evidence at all to support the party opposing the motion." Kaiser, 65 Wn.2d at 463. The court held that the driver's negligence presented a jury question. Kaiser, 65 Wn.2d at 465.

The passenger had asked the Supreme Court to hold that the bus driver was negligent as a matter of law because he violated former RCW 46.56.010,[1] a now-repealed provision that made it unlawful to operate a vehicle under the influence of drugs. The court rejected this argument, holding there could be no criminal culpability under the statute for the bus driver unless he knew the medication caused drowsiness:

> We do not think that one who innocently takes a pill, which is prescribed by a doctor, can be convicted of a crime under this statute and thus be negligent per se unless he has knowledge of the pill's harmful qualities. To hold otherwise would be to punish one who is not culpable.

Kaiser, 65 Wn.2d at 466. Viewed in the light most favorable to the driver, the evidence showed he had no knowledge of the pill's side effects. If so, his condition was involuntary. Involuntariness "negatived the mens rea and established the driver's innocence." Kaiser, 65 Wn.2d at 468.

The State argues that if Kaiser holds there is an implied mens rea element in the statute, the holding is inapposite because the crime of driving under the influence has been recodified and repeatedly redefined since 1965 when Kaiser

---

[1] Former RCW 46.56.010 (1961) provided, in pertinent part, that "It is unlawful for any person who is . . . under the influence of any . . . drug to a degree which renders him incapable of safely driving a vehicle to drive a vehicle upon the public highways. The fact that any person charged with a violation of this section is or has been entitled to use such drug under the laws of this state shall not constitute a defense against any charge of violating this section." LAWS OF 1961, ch. 12, § 46.56.010. This law was repealed in 1965. LAWS OF 1965, Ex. Sess., ch. 155, § 91.

5

was decided.[2] The State asks us to decide as a matter of first impression that the present-day statute, RCW 46.61.502(1), was intended by the legislature to create a strict liability crime of driving under the influence, with no mens rea element under any circumstances. Such an analysis would entail consideration of factors set forth in State v. Bash, 130 Wn.2d 594, 605-06, 925 P.2d 978 (1996).

Dailey's appeal does not warrant a ruling so broad as the State envisions. For one thing, it is not clear that the definition of the offense today differs materially from the definition the court considered in Kaiser. The former statute contained no explicit mens rea element. And it stated, just as the current statute does, that it was not a defense that the driver was "entitled to use" the intoxicating drug. RCW 46.61.502(2); former RCW 46.56.010 (1961) (LAWS OF 1961, ch. 12.) So, if the Kaiser court determined that under the previous statute a defendant's lack of knowledge of the side effects of prescription drugs was relevant to the crime of driving under the influence of prescription drugs, this court is not in a position to declare that the modern statute makes such knowledge irrelevant.

---

[2] See LAWS OF 2011, ch. 293, § 2; LAWS OF 2008, ch. 282, § 20; LAWS OF 2006, ch. 73, § 1; LAWS OF 1998, ch. 213, § 3; LAWS OF 1994, ch. 275, § 2; LAWS OF 1993, ch. 328, § 1; LAWS OF 1987, ch. 373, § 2; LAWS OF 1986, ch. 153, § 2; LAWS OF 1979, Ex. Sess., ch. 176, § 1 (amending RCW 46.61.602); see also LAWS OF 2001, ch. 300, § 1; LAWS OF 1996, ch. 199, § 8; LAWS of 1983, ch. 164, § 2 (amending RCW 46.61.522).

We nevertheless reject Dailey's appeal, but on a narrower ground. The question before us is whether mens rea is an implied element, not whether evidence of mens rea is relevant. To the extent Kaiser suggests that knowledge of the soporific qualities of a prescription drug is an implied element, we regard such a suggestion as dicta rather than as a holding that controls the outcome in the present case. The reason is that the record of the trial in Kaiser already contained affirmative evidence of the driver's lack of knowledge about the medication he took. Therefore, the court in Kaiser did not need to consider, let alone decide, the specific issue before us here: allocating the burden of proof in a criminal prosecution where a defendant claims a lack of knowledge about the effects of taking a prescribed medication that impaired his ability to drive. In a Kansas case the Kaiser court quoted and relied on, the court squarely imposed upon the defendant the burden of proving this type of ignorance as an affirmative defense.

The Kaiser court stated, "We find the reasoning and the rule to be particularly well stated in the case of State v. Brown, 38 Kan. 390, 16 Pac. 259 (1888)." Kaiser, 65 Wn.2d at 466. The court quoted at length from Brown:

> ". . . General terms inflicting punishment upon 'any person' who might do any particular act should be construed to mean only such persons as act voluntarily and intelligently in the performance of the interdicted act. We should not suppose, in the absence of specific words saying so, that the legislature intended to make accidents and mistakes crimes. Human actions can hardly be considered as culpable either in law or in morals, unless an intelligent consent of the mind goes with the actions; and to punish where there is no culpability would be the most reprehensible tyranny. The legislature usually in enacting criminal statutes,

7

enacts them in general terms so as to make them by their terms include all persons; and yet it is always understood that some persons, as idiots, insane persons, young children, etc., are not to be considered as coming within the provisions of the statute. It is always understood that the courts will construe the statute in accordance with the general rules of statutory construction, and apply the act only to such persons as the legislature really intended to apply it; that is, to apply the act to such persons only as should intelligently and voluntarily commit the acts prohibited by the legislature."

Kaiser, 65 Wn.2d at 467, quoting Brown, 16 P. at 260. In the sentences that immediately follow this quoted language, the Brown court answered the question before us and not decided in Kaiser:

*And it is generally better that the exceptions to the operation of the statute should not be stated in the statute itself, for, if they are, then it becomes necessary for the public prosecution to also state them in the complaint.* If idiots, insane persons, children, etc., are in terms excepted from the provisions of the statute, then it would be necessary for the public prosecutor to see that all informations or indictments charging the particular offense should substantially follow the language of the statute, and should also state the exceptions as a part of the description of the offense. He should allege that the case did not come within any of the exceptions, and he would also have to prove the same. *But, where the exceptions are not stated in the statute, the complaint may charge the offense substantially in the language of the statute, and without mentioning any of the exceptions, and then, if the defendant claims that the case comes within any of the exceptions, he must prove the same as a part of his defense.*

Brown, 16 P. at 260-61 (emphasis added). The Brown court allocated as an affirmative defense to be proved by the defendant a claim that "he innocently [drank] the liquor which intoxicates him, without having any knowledge of its intoxicating qualities, and without having any idea that it would make him drunk." Brown, 16 P. at 259-60.

8

The Washington Supreme Court's recent decision in State v. Deer, 175 Wn.2d 725, 287 P.3d 539 (2012), cert. denied, 133 S. Ct. 991 (2013), suggests the court would similarly classify as an affirmative defense a defendant's claim that he innocently took a prescribed drug without knowledge of its impact on his ability to operate a motor vehicle. In Deer, the court considered whether the State must prove volition as an element of rape of a child in the third degree. Deer, 175 Wn.2d at 727-28. Deer argued that once she produced evidence of a lack of a voluntary action, the State had the burden of proving volition beyond a reasonable doubt. Deer, 175 Wn.2d at 731-32. Deer claimed she was sleeping during several acts of intercourse and therefore could not be guilty of rape. The court held that Deer's claim was an affirmative defense that she was required to prove by a preponderance of the evidence:

> We must reject Deer's contention that the State is required to prove as an element of child rape that she was awake during the alleged acts. *While she is entitled to argue a lack of conscious action, her claim is properly treated as an affirmative defense, much like claims of involuntary intoxication,* insanity, or unwitting possession. See 13B SETH A. FINE & DOUGLAS J. ENDE, WASHINGTON PRACTICE: CRIMINAL LAW § 3204, at 237 (2d ed. 1998) (observing that for crimes in which there is no mens rea requirement, the defense of involuntary intoxication must be proved by the defendant by a preponderance of the evidence).

Deer, 175 Wn.2d at 733 (emphasis added).

Dailey's contention is similar to Deer's. He claims that the State was required to prove, as an element of vehicular assault committed by driving while under the influence of prescription drugs, that he knew about the side effects of

his medication.

Unlike the defendants in <u>Deer</u> or <u>Brown</u>, Dailey did not even produce evidence of his lack of knowledge. Because Dailey did not attempt to present an affirmative defense of lack of knowledge, we need not decide whether that affirmative defense is permissible. The only question we are called on to decide is whether knowledge is an implied element the State must prove.

For the reasons articulated in <u>Brown</u> and consistent with the court's reasoning in <u>Deer</u>, we reject Dailey's claim that <u>Kaiser</u> imposed an implied mens rea element.

Affirmed.

Becker, J.

WE CONCUR:

Leach, C.J.

Appelwick, J.