**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47558-8-II |
| Respondent, | PUBLISHED OPINION |
| v. | |
| DOCIE E. BURCH, | |
| Appellant. | |

BJORGEN, C.J. — Docie Burch appeals her convictions for vehicular homicide and vehicular assault stemming from a drunk driving accident. She argues that the trial court erred by giving the jury to-convict instructions for both crimes that allowed the jury to find her guilty without finding that the State proved ordinary negligence. We hold that to convict a defendant of vehicular homicide or vehicular assault, the State need not prove that a driver acted with ordinary negligence in the operation of a motor vehicle if it proves that the driver was under the influence of alcohol or drugs while driving that vehicle, along with other elements of the offense. Therefore, the trial court did not err by omitting a negligence element from its instructions to the jury. Accordingly, we affirm Burch's convictions.

FACTS

In December 2014, Burch was driving across an icy bridge when her truck spun out, slid off the road, and hit two men who were investigating the scene of an earlier accident. One of the men died and the other received serious injuries, including multiple broken bones and a severe ear laceration.

Burch was uncooperative with law enforcement officers who responded to the scene. During their contact with Burch, the officers noticed that she smelled strongly of intoxicants.

They restrained Burch and brought her to a hospital to draw blood to test for intoxicants. Testing

of that sample showed a blood alcohol concentration of .09, indicating a concentration between

.11 and .14 two hours after the accident.

The State charged Burch with vehicular homicide and vehicular assault, alleging that she

drove or operated a motor vehicle while under the influence of intoxicating liquor or any drug or

any combination of the two, in a reckless manner, and with disregard for the safety of others.

Following trial, the court gave the jury the State's proposed to-convict instructions, which

specified that it could reach a guilty verdict as to vehicular homicide only if it found

> (1) That . . . the defendant drove a motor vehicle;
> (2) That the defendant's driving of the motor vehicle proximately caused
> injury to another person;
> (3) That at the time of causing the injury, the defendant was driving the motor
> vehicle
> (a) while under the influence of intoxicating liquor or drugs; or
> (b) in a reckless manner; or
> (c) with disregard for the safety of others;
> (4) That the injured person died within three years as a proximate result of the
> injuries; and
> (5) That the defendant's act occurred in the State of Washington.

Clerk's Papers (CP) at 43. Similarly, the to-convict instruction for vehicular assault informed the

jury it could reach a guilty verdict only if it found

> 1. That . . .the defendant drove a vehicle;
> 2. That the defendant's driving proximately caused substantial bodily harm to
> another person;
> 3. That at the time the defendant
> a. drove the vehicle in a reckless manner; or
> b. was under the influence of intoxicating liquor or drugs; or
> c. drove the vehicle with a disregard for the safety of others; and
> 4. That this act occurred in the State of Washington.

CP at 39.

In other instructions, the trial court clarified the standards for the mental states of

recklessness and disregard for the safety of others. However, no instruction mentioned any

further mental element that would be required to find Burch guilty because she was under the influence of intoxicating liquor or drugs. Burch did not object to any of the instructions and did not propose alternative instructions.

The jury found Burch guilty of both vehicular homicide and vehicular assault. In special verdicts, the jury found that Burch had driven while under the influence of intoxicating liquor or drugs, but had not driven recklessly. CP at 20-21. The jury was unable to agree as to whether she had driven with disregard for the safety of others. *Id*.

Burch appeals her convictions.

ANALYSIS

The fundamental question presented by this appeal is whether the crimes of vehicular homicide and vehicular assault committed while under the influence of alcohol or drugs require the State to prove ordinary negligence in addition to the fact that the defendant was under the influence of alcohol or drugs. Burch separately challenges her convictions for vehicular homicide and vehicular assault on the grounds that the to-convict jury instructions omitted the negligence element. The State implicitly contends that both vehicular homicide and vehicular assault are strict liability offenses, arguing that no showing of negligence is required for either crime in light of legislative amendments and subsequent case law.

I. STANDARD OF REVIEW

In a criminal case, the State bears the burden of proving each element of a charged crime beyond a reasonable doubt. *State v. Fisher*, 165 Wn.2d 727, 753, 202 P.3d 937 (2009). In recognition of this requirement, the trial court's to-convict jury instruction generally must contain all elements of the crime essential to the conviction. *State v. Mills*, 154 Wn.2d 1, 7, 109 P.3d 415 (2005). Whether the elements of a particular statutory crime include a mens rea

element is a matter for the legislature to decide. *State v. Bash*, 130 Wn.2d 594, 604, 925 P.2d 978 (1996). Thus, we must interpret relevant statutes to ascertain whether the legislature intended to include such an element. *Id*. at 604-05. We conduct this inquiry de novo. *State v. Wilson*, 170 Wn.2d 682, 687, 244 P.3d 950 (2010); *Mills*, 154 Wn.2d at 7.

Our interpretive analysis first examines the statute's language to determine whether it expresses any mens rea requirement. *State v. Barnes*, 153 Wn.2d 378, 384, 103 P.3d 1219 (2005). If it is silent as to such a requirement, we consider the legislative history of the statute and relevant case law. *Id*.; *Wilson*, 170 Wn.2d at 687. Where resort to legislative history and case law proves inconclusive, we consider the eight factors outlined in *Bash*, which weigh upon legislative intent. *State v. Anderson*, 141 Wn.2d 357, 363, 5 P.3d 1247 (2000).

## II. VEHICULAR HOMICIDE

Burch argues that ordinary negligence is an element of vehicular homicide by driving under the influence of alcohol or drugs. We disagree.

A.      Statutory Language

The vehicular homicide statute, RCW 46.61.520, provides in relevant part:

(1) When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person, the driver is guilty of vehicular homicide if the driver was operating a motor vehicle:
(a) While under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502; or
(b) In a reckless manner; or
(c) With disregard for the safety of others.

The plain language of subsection (1)(a) is silent as to ordinary negligence or any other mens rea requirement. However, the other two subsections express clear requirements of driving in a reckless manner or with disregard for the safety of others.

The general maxim of statutory construction, *expressio unius exclusio alterius est*, provides some assistance in determining legislative intent. According to that maxim,

> "[w]here a statute specifically designates the things or classes of things upon which it operates, an inference arises in law that all things or classes of things omitted from it were intentionally omitted by the legislature."

*State v. Swanson*, 116 Wn. App. 67, 75, 65 P.3d 343 (2003) (quoting *Wash. Nat. Gas Co. v. Pub. Util. Dist. No. 1*, 77 Wn.2d 94, 98, 459 P.2d 633 (1969)). Applying *expressio unius* to RCW 46.61.520, we may infer the legislature's intent to impose strict liability in subsection (1)(a) from its decision to express mens rea requirements in subsections (1)(b) and (1)(c) but not in subsection (1)(a). However, because subsection (1)(a) is silent on its face as to mens rea, we look to the legislative history and relevant case law for further guidance.

B.      Legislative History and Case Law

The current statutory language set out above was enacted by amendment in 1991. LAWS OF 1991, ch. 348, § 1. Before the 1991 amendment, the statute read in relevant part:

> When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person while under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502 . . . the person so operating such vehicle is guilty of vehicular homicide.

Former RCW 46.61.520 (1983). This language is substantively identical to the current language, though organized differently. The available legislative reports are silent as to the purpose of the reorganization. *See, e.g.*, HB REP. ON S.H.B. 1886, 52nd Leg., Reg. Sess., at 1-2 (Wash. 1991) (discussing only the sentencing-related portions of the amending act).

In *State v. MacMaster*, our Supreme Court adopted a reading of the earlier statute that required the State to prove that impairment due to alcohol was a proximate cause of the victim's death. 113 Wn.2d 226, 231, 778 P.2d 1037 (1989). The court's reasoning was that even though

the plain language of the statute did not expressly provide for such a requirement, it was necessary to avoid imposing strict liability. *Id*.

In two later opinions, other divisions of our court noted that to convict a defendant of vehicular homicide, the State must prove he acted with ordinary negligence in addition to proving he was under the influence of intoxicants. These opinions, *State v. Miller*, 60 Wn. App. 767, 772, 807 P.2d 893 (1991), and *State v. McAllister*, 60 Wn. App. 654, 658-59, 806 P.2d 772 (1991), relied on *State v. Fateley*, 18 Wn. App. 99, 566 P.2d 959 (1977), a case interpreting an even earlier version of RCW 46.61.520 defining the antecedent crime of negligent homicide. *Fateley*, in their view, established that ordinary negligence was a requirement in addition to operation of a vehicle under the influence. Yet the court in *Fateley* had merely explained that "more than ordinary negligence must be shown to support a conviction for negligent homicide," and operation of a vehicle under the influence proximately causing the victim's death was one such sufficient showing. 18 Wn. App. at 103-04. In fact, *Fateley* seemed to view operation of a vehicle under the influence simply as probative of driving in a reckless manner and with disregard for the safety of others, which were then and are now alternative grounds for conviction based on mental culpability greater than ordinary negligence. *Id*. at 103 n.5; *see also State v. Eike*, 72 Wn.2d 760, 764-65, 435 P.2d 680 (1967).

Following the 1991 amendment to RCW 46.61.520, our Supreme Court revisited the *MacMaster* proximate cause issue in *State v. Rivas*, 126 Wn.2d 443, 896 P.2d 57 (1995). It noted that the court in *MacMaster* had "provided no support nor analysis for its conclusion that a strict liability result must be avoided." *Id*. at 450. It further noted that despite the *MacMaster* reasoning, the legislature did not add an express requirement that the State prove a proximate causal link between the driver's intoxication and the death. *Id*. at 451. Instead, "[t]he

Legislature did state . . . as clearly as possible, that the only causal connection which the State is required to prove is the connection between the act of driving and the accident." *Id*. Reassessing the elements in light of the amended language, it held that "RCW 46.61.520, as amended in 1991, does not require proof of a causal connection between intoxication and death." *Id*. at 453.

The State argues that *Rivas* effectively controls our analysis. However, the court in *Rivas* did not hold that vehicular homicide is a strict liability crime. *See* 126 Wn.2d at 453 ("[E]ven if RCW 46.61.520, as amended in 1991, sets forth a strict liability crime, no authority has been cited indicating that strict liability is impermissible."). *Rivas* clearly disapproved of *MacMaster*'s attempt to avoid a strict liability reading by grafting a nonstatutory requirement that the driver's intoxication proximately cause the victim's death. *Id*. at 451-52. It also noted that other states impose strict liability for analogous offenses. *Id*. at 452-53. Yet it stopped short of declaring that our legislature intended to follow suit. More importantly, it neither approved nor rejected the ordinary negligence element recognized by *McAllister* and *Miller*. Therefore, it cannot be said that *Rivas* is dispositive here. We must examine the *Bash* factors to determine whether the legislature intended vehicular homicide to be a strict liability offense.

C.      *Bash* Factors

When considering whether a statute silent as to mens rea defines a strict liability offense, we look to the eight *Bash* factors: (1) whether there is an antecedent or analogous common law offense and its mens rea element; (2) whether the crime can be characterized as a "public welfare offense"; (3) the extent to which a strict liability reading of the statute would encompass seemingly innocent conduct; (4) the harshness of the penalty imposed for the offense; (5) the seriousness of the harm to the public; (6) the ease or difficulty of the defendant ascertaining the

true facts; (7) whether a mens rea requirement would make proof of fault overly difficult and time consuming; and (8) the number of prosecutions to be expected. *Bash*, 130 Wn.2d at 605-06.

### 1. Common Law Antecedent

Vehicular homicide has no direct ancestry in the common law. *Rivas*, 126 Wn.2d at 446-47. Where a statutory crime "has no common law antecedent, the conventional mens rea element cannot directly control." *State v. Warfield*, 119 Wn. App. 871, 880, 80 P.3d 625 (2003). The closest analog to vehicular homicide at common law was manslaughter. *Rivas*, 126 Wn.2d at 446. That crime required proof of gross negligence. *State v. Williams*, 4 Wn. App. 908, 912, 484 P.2d 1167 (1971). However, the legislature created the crime of negligent homicide, the statutory antecedent to vehicular negligent homicide, to allow for convictions where manslaughter could not be proved. *State v. Costello*, 59 Wn.2d 325, 334, 367 P.2d 816 (1962) (Foster, J., concurring specially, with majority support). Thus, this factor does not significantly illuminate legislative intent in enacting the 1991 amendments to RCW 46.61.520.

### 2. Classification as a Public Welfare Offense

Public welfare offenses are likely to be strict liability offenses. *See Bash*, 130 Wn.2d at 606-07. These offenses are malum prohibitum crimes, typically regulatory in nature, of which the victim is society at large:

> While such offenses do not threaten the security of the state in the manner of treason, they may be regarded as offenses against its authority, for their occurrence impairs the efficiency of controls deemed essential to the social order as presently constituted. In this respect, whatever the intent of the violator, the injury is the same, and the consequences are injurious or not according to fortuity. Hence, legislation applicable to such offenses, as a matter of policy, does not specify intent as a necessary element.

*Morissette v. United States*, 342 U.S. 246, 256, 72 S. Ct. 240, 96 L. Ed. 288 (1952). Many public welfare offenses result in "'no direct or immediate injury to person or property but merely

create the danger or probability of it which the law seeks to minimize.'" *Bash*, 130 Wn.2d at 607 (quoting *Morissette*, 342 U.S. at 255-56).

The offense of vehicular homicide shares characteristics on each side of this divide. It impairs controls deemed essential to the social order and visits an injury no matter what the intent of the violator. On the other hand, the offense has a clear victim, the deceased, and could be deemed more malum in se, given modern sensibilities. Thus, this factor weighs in favor of neither position.

3.      Encompassing of Seemingly Innocent Conduct

Offenses that criminalize a broad range of apparently innocent behavior are less likely to be strict liability offenses. *Bash*, 130 Wn.2d at 608. However, vehicular homicide committed by a driver under the influence encompasses little, if any, seemingly innocent conduct.

Driving under the influence of alcohol or drugs is itself a serious criminal offense. RCW 46.61.502(1). Therefore, operating a motor vehicle under the influence is rarely, if ever, innocent behavior.[1] Because vehicular homicide while under the influence of intoxicating liquor or drugs requires the State to prove the facts of both impairment and operation of a motor vehicle, the crime necessarily encompasses primarily or solely criminal behavior.

---

[1] It remains an open question whether driving under the influence, as defined in RCW 46.61.502, is itself a strict liability offense. *See State v. Dailey*, 174 Wn. App. 810, 815, 300 P.3d 834 (2013). Interpreting an older intoxicated driving statute, former RCW 46.56.010 (1964), our Supreme Court held that a person was not guilty of the crime without knowledge that an ingested substance could produce intoxication. *Kaiser v. Suburban Transp. Sys.*, 65 Wn.2d 461, 466, 401 P.2d 350 (1965). Our appellate courts have yet to decide whether the successor crime requires the State to prove the defendant was negligent. *See Dailey*, 174 Wn. App. at 815; *see also State v. Rich*, 184 Wn.2d 897, 905, 365 P.3d 746 (2016) (noting that RCW 46.61.502 contains no recklessness element). Regardless, knowledge of the intoxicating properties of the most common intoxicants—alcohol and marijuana—is nearly universal, so with or without the *Kaiser* requirement, driving under the influence of those substances will almost never be innocent behavior.

Some seemingly innocent conduct could be encompassed by a strict liability interpretation of RCW 46.61.520(1)(a) if there were no proximate cause requirement. For example, a driver who is under the influence of drugs or alcohol carrying a passenger in his vehicle could be safely stopped at a traffic light when a second driver collides with the first driver's vehicle, killing the first driver's passenger. The first driver in this scenario is likely less culpable than the second, yet if a driver's impairment and operation of a motor vehicle were the only elements of RCW 46.61.520(1)(a), the first driver would be guilty of vehicular homicide. However, RCW 46.61.520(1)(a) specifically requires that the victim's death be the "proximate result of injury proximately caused by the [driver]." We have held that this requirement incorporates the common law principles of proximate causation as judicially defined in Washington. *State v. David*, 134 Wn. App. 470, 481-82, 141 P.3d 646 (2006).

According to these longstanding principles, proximate cause has two components: (1) cause-in-fact, or actual cause and (2) legal cause. *State v. Bauer*, 180 Wn.2d 929, 935 n.5, 329 P.3d 67 (2014). Our Supreme Court also has held that "'legal cause' in criminal cases differs from, and is narrower than, 'legal cause' in tort cases in Washington." *Id*. at 940. In criminal cases, proximate cause requires a showing that the defendant "actively participate[d] in the immediate physical impetus of harm." *Id*.

Application of these principles ensures that even a strict liability understanding of vehicular homicide does not encompass a significant volume of innocent conduct. In our hypothetical example, the first driver's driving under the influence likely would not be considered a proximate cause of the passenger's death because the second driver's actions would be considered a superseding cause of the collision. A superseding cause is "a new, independent act [that] breaks the chain of causation." *Riojas v. Grant County Pub. Util. Dist.*, 117 Wn. App.

694, 697, 72 P.3d 1093 (2003). Only intervening acts that are not reasonably foreseeable qualify as such superseding events. *State v. Roggenkamp*, 115 Wn. App. 927, 945, 64 P.3d 92 (2003), *aff'd*, 153 Wn.2d 614, 106 P.3d 196 (2005). Therefore, the driver under the influence in our example would be guilty of vehicular homicide only where the intervening act was reasonably foreseeable.

Given the clear proximate cause requirement of RCW 46.61.520(1)(a), little seemingly innocent conduct would be prohibited by a strict liability interpretation of RCW 46.61.520(1)(a). Therefore, this factor weighs toward such an interpretation.

4.      Harshness of the Penalty Imposed

Where severe punishment is imposed, the legislature more likely intended to require some finding of fault. *Bash*, 130 Wn.2d at 609. Vehicular homicide is a class A felony,[2] RCW 46.61.520(2), with a seriousness level of 11, RCW 9.94A.515. Depending on a defendant's offender score, the crime is punishable by imprisonment from 78 to 280 months. RCW 9.94A.510. Further, 24 months are added to a defendant's sentence for each prior conviction for driving or physically controlling a vehicle under the influence of alcohol or drugs. RCW 46.61.520(2); RCW 46.61.5055. The penalties imposed for vehicular homicide can result in years, and potentially decades, of prison time. The harshness of the penalty weighs plainly against a strict liability interpretation.

---

[2] The legislature elevated the offense from a class B to class A felony in 1996, after our Supreme Court decided *Rivas*, without making other alterations. E.S.H.B. 2227, 54th Leg., Reg. Sess. (Mar. 28, 1996).

5.      Potential for Harm to the Public

Where the potential harm to the public is great, the legislature more likely intended to impose strict liability.  *Bash*, 130 Wn.2d at 609-10.  Vehicular homicide poses a very serious risk of harm to the public.  Our Supreme Court discussed this potential for harm in *Bash*, noting that

> [c]ourts have recognized that alcohol is an inherently dangerous substance producing harmful secondary effects such as drunk driving, and accordingly alcohol-related offenses may be strict liability offenses.  Moreover, the conduct in vehicular homicide by intoxication requires the choice to consume alcohol and drive, an unquestionably dangerous combination.

130 Wn.2d at 611 (internal citation omitted).  This risk stands in contrast to the dog-attack statute at issue in *Bash*, which the court noted was unlikely to effectively deter dog attacks if owners were unaware that their dogs were dangerous.  *Id*. at 610-11.

With crimes that require voluntary impairment and operation of a motor vehicle, the deterrent effect is arguably *stronger* when no mens rea is required.  As Justice Durham noted in her *MacMaster* concurrence, intoxicated driving has historically been illegal per se in Washington regardless of actual impairment, because the legislature considered "dangerous drunk driving as a problem of a severity that only clear-cut preventatives, overbroad though they may be, are capable of addressing."  113 Wn.2d at 237 (Durham, J., concurring).  Among the driving under the influence offenses, it cannot be denied that vehicular homicide involves the greatest possible harm.  This factor weighs plainly in favor of a strict liability interpretation.

6.      Difficulty of Ascertaining the Facts

Where it is difficult for a defendant to ascertain the true facts relevant to commission of the crime at issue, the legislature more likely intended to impose some mens rea element.  *Bash*, 130 Wn.2d at 605-06, 610.  However, it is relatively easy for a defendant to ascertain facts surrounding his or her driving under the influence.  At least where the defendant's conduct is

voluntary, the fact of intoxication—or at least the consumption of intoxicating substances—will

usually be known to the defendant prior to operating a vehicle.  Even in situations involving, for

example, pharmaceutical medicines not commonly known to have intoxicating effects,

information regarding the potential for impairment and warnings regarding operation of motor

vehicles and heavy machinery are readily available and often among the labels on the packaging.

This factor weighs toward a strict liability interpretation.

7.      Difficulty of Proving Fault and Number of Prosecutions Expected

As to the last two factors, little can be said on the record before us.[3]  As in *Bash*,

> [t]he record does not offer any information regarding the difficulty for the
> prosecution in proving fault nor does it offer whether the burden would be so time-
> consuming that imposing strict liability would be justified.  Likewise, the record is
> silent as to the number of prosecutions which can be expected under the [the
> statute].

130 Wn.2d at 610.  It appears that neither of these remaining factors weighs significantly in

either direction, but we can say little on the matter without going beyond the record.

---

[3] Burch presents a very limited argument that proof of fault would not be overly difficult because
ordinary negligence encompasses a variety of behaviors.  However, she points to nothing in the
record or our case law showing that these behaviors would be easy to prove in the context of a
vehicular homicide or vehicular assault prosecution.

Regarding the number of prosecutions, she directs our attention outside of the record to
the Caseload Forecast Council's 2014 report on adult felony sentencing, which she argues shows
the number of prosecutions to be "relatively low."  Reply Br. of Appellant at 4.  Even if we were
to consider the report, the data contained therein do not show levels of prosecution low or high
enough to be significantly probative of legislative intent.  According to those data, in 2014 in
Washington 22 people were sentenced that year for vehicular homicide due to driving under the
influence and 29 were sentenced for vehicular assault due to driving under the influence or
reckless driving.  Caseload Forecast Council, *Statistical Summary of Adult Felony Sentencing,
Fiscal Year 2014*, at 12 (March 2015).  These numbers are roughly in the middle of those for all
crimes included in the report.  The numbers rose to 28 sentences for vehicular homicide while
under the influence and 44 sentences for vehicular assault while under the influence or driving
recklessly in the 2015 report, a notable increase but still effectively immaterial for purposes of a
*Bash* analysis.  Caseload Forecast Council, *Statistical Summary of Adult Felony Sentencing,
Fiscal Year 2015,* at 12 (January 2016).

8.      Conclusion

Balancing the *Bash* factors is difficult where, as here, they point in different directions. The severity of the punishment imposed for violation of RCW 46.61.520(1)(a) indicates that the legislature likely intended to impose strict liability only if the potential risk of harm was great and the likelihood of punishing innocent conduct was low.  Because driving under the influence presents a serious risk of death to the people of Washington, and the statute's proximate cause requirement greatly limits application to any seemingly innocent conduct, we hold that analysis of the *Bash* factors indicates that the legislature intended to impose strict liability for vehicular homicide while under the influence of alcohol or drugs.

These considerations, along with the analysis of relevant statutory language above, lead to a single conclusion:  the trial court did not err by instructing the jury that it could convict Burch without finding ordinary negligence or any other culpable mental state.

## III.  VEHICULAR ASSAULT

Burch argues that ordinary negligence is also an element of vehicular assault by driving under the influence of alcohol or drugs.  We disagree.

A.      Statutory Language

The vehicular assault statute, RCW 46.61.522, provides in relevant part:

(1) A person is guilty of vehicular assault if he or she operates or drives any vehicle:
. . . .
(b) While under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502, and causes substantial bodily harm to another.

The plain language of subsection (1)(b) does not mention any mens rea requirement.  However, as with the vehicular homicide statute, the other two subsections of RCW 46.61.522(1) express mens rea requirements: recklessness and disregard for the safety of others.

14

We may infer by application of expressio unius that the legislature intended to impose no mens rea requirement under subsection (1)(b). However, we again turn to the legislative history and relevant case law for further guidance.

B.     Legislative History and Case Law

The current language of RCW 46.61.522 was enacted by amendment in 2001. When considering the 2001 amendments, the legislature specifically distinguished vehicular assault from negligent driving in the first degree. HB REP., S.B. 5790, 57th Leg., Reg. Sess., at 2 (2001). It noted that the latter offense requires that the driver "operat[e] a vehicle in a manner that is negligent and endangers a person or property" and "exhibit the effects of having consumed alcohol or drugs." *Id*. This shows that the legislature understood how to define an offense that required both negligence and intoxication. Yet it included no negligence requirement in RCW 46.61.522(1)(b). However, the legislature did not expressly state that it intended vehicular homicide to be a strict liability offense.

The prior language of RCW 46.61.522 provided:

> (1) A person is guilty of vehicular assault if he operates or drives any vehicle:
> . . . .
> (b) While under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502, and this conduct is the proximate cause of serious bodily injury to another.

The substantive differences between this earlier language and the current language are that proximate causation was required under the older statute but only causation is required under the current one, and "serious bodily injury" to the victim was formerly required while now "substantial bodily harm" is required. The following passage from the legislative reports supports the legislative intent to make these changes:

> The causation element of vehicular assault is changed from proximate cause to actual cause, and the requirement that recklessness or driving under the influence

15

is the cause of the injury is removed. In addition, the degree of injury that is required for vehicular assault is lowered from "serious bodily injury" to "substantial bodily harm."

HB REP., S.B. 5790, 57th Leg., Reg. Sess., at 2 (2001). However, the House Bill Report also states that "[t]he change to the causation prong brings the vehicular assault statute in line with the vehicular homicide statute," which does require a showing of proximate cause. HB REP., S.B. 5790, 57th Leg., Reg. Sess., at 3 (2001), RCW 46.61.520.

Interpreting the former statutory language, Division One of our court held in *State v. Hursh*, 77 Wn. App. 242, 246-47, 890 P.2d 1066 (1995),

that RCW 46.61.522 cannot be construed to require a showing of negligent conduct as an element of vehicular assault. To attempt such a construction would be to read into the statute an element which is not there.

The court accordingly approved a to-convict instruction that did not require the jury to find that the defendant acted with ordinary negligence.

However, *State v. Lovelace*, 77 Wn. App. 916, 919, 895 P.2d 10 (1995) reached a different conclusion, holding that "[t]o establish *proximate cause* in a vehicular assault case, the State must prove ordinary negligence and intoxication while driving." (Emphasis added.) It cited *McAllister*, which similarly held: "What must be shown to support a conviction under the first alternative [the driver's intoxication] as the proximate cause is a combination of ordinary negligence and intoxication while driving." 60 Wn. App. at 658-59 (footnotes omitted).

By changing the causation element in 2001 from one expressly requiring proximate cause to one merely requiring "cause[]," the legislature arguably indicated its disapproval of the holding in *Lovelace*. Moreover, our Supreme Court's decision in *Rivas* called into question the case law on which the *Hursh* court relied in reaching its result. However, it remains unclear whether *Lovelace* was fully superseded by the 2001 amendments.

16

Following those amendments, only one appellate court division appears to have considered whether ordinary negligence is an element of vehicular assault. Addressing the question of whether first degree negligent driving is a lesser included offense of vehicular assault, Division Three of our court stated without citation that

> [t]o commit vehicular assault, a driver must: drive recklessly and cause serious bodily injury or drive intoxicated and cause serious bodily injury. . . . First degree negligent driving is not a lesser-included offense of the second alternative means of committing vehicular assault because under that alternative there is no requirement of negligent driving.

*State v. Bosio*, 107 Wn. App. 462, 465-66, 27 P.3d 636 (2001). The court apparently interpreted RCW 46.61.522 according to its plain language alone, as it does not address *Lovelace*, *Hursh*, or any of the vehicular homicide cases. Nor does the decision address the *Bash* factors.

Finally, we note that our Supreme Court in *State v. Pappas*, 176 Wn.2d 188, 194, 289 P.3d 634 (2012), observed that "[i]n 2001, the vehicular assault statute was amended to eliminate the proximate cause requirement." The issue in *Pappas* was whether the Sentencing Reform Act, chapter 9.94A RCW, authorized an exceptional sentence for vehicular assault when the jury found that the victim's injuries substantially exceed "substantial bodily harm," which is the current level of harm required to convict. *Id.* at 193-94. In distinguishing two prior decisions, the court stated:

> Both *Nordby* and *Cardenas* were decided under the pre-2001 version of the vehicular assault statute that required a higher level of harm, i.e., that the defendant proximately caused "serious bodily injury" while acting in a reckless manner or under the influence of alcohol or drugs. Former RCW 46.61.522 (1996). . . . In 2001, the vehicular assault statute was amended to eliminate the proximate cause requirement, to include an additional means of committing vehicular assault by showing "disregard for the safety of others," and to lower the harm requirement from "serious bodily injury" to "substantial bodily harm." RCW 46.61.522 (amended 2001).

*Pappas*, 176 Wn.2d at 193-94.

This analysis focuses on the lowering of the harm level, which pertains to the basis for an exceptional sentence under RCW 9.94A.535(3)(y). The type of causation played no role in the *Pappas* court's analysis, but rather was part of the background description of the remaining features of the 2001 legislation. A statement is dicta when it is not necessary to the court's decision in a case. *Protect the Peninsula's Future v. City of Port Angeles*, 175 Wn. App. 201, 215, 304 P.3d 914 (2013). Dicta is not binding authority. *Id.* Therefore, *Pappas* is not controlling on the nature of the causation required for vehicular assault.

The terms of the statute, its legislative history, and case law interpreting it do not lift ambiguity's fog from this issue. Therefore, we turn to the *Bash* factors to determine whether negligence is an element of vehicular assault.

C.      *Bash* Factors

Analysis of most of the *Bash* factors for vehicular assault is the same as that outlined in Section I(C) supra for vehicular homicide. Those that differ are discussed below.

1.      Harshness of the Penalty Imposed

The penalty imposed for vehicular assault is less harsh than that imposed for vehicular homicide. Vehicular assault is a class B felony, RCW 46.61.522(2), with a seriousness level of four, RCW 9.94A.515. As such, it is punishable by 3 to 84 months in prison. RCW 9.94A.510. This penalty is still quite serious, and therefore weighs against interpreting RCW 46.61.522 as imposing strict liability. However, the penalty's weight is not as heavy as with vehicular homicide.

2.      Potential for Harm to the Public

The potential harm to the public is not as great as with vehicular homicide. Whereas the latter crime requires a killing, vehicular assault requires only substantial bodily harm. However,

18

the legislature expressed its intent to "address[] a gap in the law that does not allow prosecution in cases where a person seriously injures another person" when it enacted the 2001 amendments to RCW 46.61.522. HB REP., S.B. 5790, 57th Leg., Reg. Sess., at 3 (2001). Therefore, our analysis in Section I(C)(5), above, applies here as well, since this offense is part of an overall statutory scheme to harshly penalize and thereby deter driving under the influence. The legislature intended to ensure that the potential for bodily injury resulting from driving under the influence be attended by the potential for graduated penalties, and therefore this factor weighs toward a strict liability reading.

       3.      Encompassing of Seemingly Innocent Conduct

Like RCW 46.61.520(1)(a), RCW 46.61.522(1)(b) imposes additional criminal liability for driving under the influence—itself a defined crime—based on the degree of harm realized. Yet unlike RCW 46.61.520(1)(a), RCW 46.61.522(1)(b) includes no express proximate cause requirement, instead requiring only a showing that the defendant "cause[d] substantial bodily harm." As noted above, the legislature was aware of this distinction when it passed the 2001 amendments. HB REP., S.B. 5790, 57th Leg., Reg. Sess., at 2 (2001).

In *Bauer*, discussed above, our Supreme Court considered the meaning of the word "causes" as used in the third degree assault statute. The court stated that before criminal liability is imposed, "the conduct of the defendant must be both (1) the actual cause, and (2) the 'legal' or 'proximate' cause of the result." 180 Wn. 2d at 935-36 (quoting *Rivas*, 126 Wn.2d at 453). Cause in fact refers to the "'but for'" consequences of an act, the physical connection between an act and an injury, which are the same in tort and criminal law. *Bauer*, 180 Wn. 2d at 936 (quoting *State v. Dennison*, 115 Wn.2d 609, 624, 801 P.2d 193 (1990)). On the other hand, legal causation involves a determination of whether liability should attach as a matter of law given the

existence of cause in fact. *Id*. If the factual elements of the tort are proved, determination of legal liability will be dependent on "'mixed considerations of logic, common sense, justice, policy, and precedent.'" *Id*. (quoting *Hartley*, 103 Wn.2d at 779).

The court in *Bauer* held that because criminal law and tort law serve different purposes, they have different principles of legal causation. *Id*. The court cited with approval to *LaFave*: "'[W]ith crimes, where the consequences of a determination of guilt are more drastic . . . it is arguable that a closer relationship between the result achieved and that intended or hazarded should be required.'" *Id*. at 936-37 (quoting 1 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 6.4(c), at 472 (2d ed. 2003)). The court also cited to Hart and Honore with approval: "'The wider doctrines of causation currently applied in tort law should not be extended to criminal law. . . . [I]n criminal law, . . . it is not normally enough merely to prove that [the] accused occasioned the harm; he must have 'caused' it in the strict sense.'" *Id*. (alterations in original) (quoting H.L.A. HART & TONY HONORE, CAUSATION IN THE LAW 350-51 (2d ed. 1985)). The court further cited to Hart and Honore for the proposition that "'[w]here [the first actor's] conduct was not sufficient [to bring about the harm] without the intervention of the second actor . . . most decisions relieve the first actor of responsibility.'" *Id*. at 940 (quoting HART & HONORE, *supra*, at 326). The court in *Bauer* ultimately held that "legal cause" in criminal cases differs from, and is narrower than, "legal cause" in tort cases in Washington. *Id*.

If legal cause is narrower or more restrictive in criminal law, then it makes no sense to interpret the 2001 amendments to the vehicular assault statute to require only the much looser and capacious standard of cause in fact. This is especially true when the 2001 amendments use simply "causes," which is the same term used in the statute at issue in *Bauer*. 180 Wn.2d at 935.

Following our Supreme Court's interpretation of the word "causes" as requiring both "actual" and "proximate" causation in *Bauer*, we interpret "causes" as used in RCW 46.61.522 as also requiring a showing of proximate cause. Accordingly, scenarios like the hypothetical stop-light collision we described in section I(C)(3), above, could not give rise to liability for vehicular assault where no such liability would attach for vehicular homicide. This factor, consequently, weighs in favor of strict liability.

As noted, the analysis of the remaining *Bash* factors does not differ from that in the analysis of vehicular homicide, above.

### 4. Conclusion

As with vehicular homicide, the *Bash* factors favor a strict liability interpretation of vehicular assault when committed by a driver under the influence of alcohol or drugs. Keeping the legislative history in mind as we view the *Bash* factors, we hold that the legislature intended vehicular assault by driving under the influence to be a strict liability offense. The trial court did not err by instructing the jury that it could convict without finding that Burch acted with ordinary negligence.

## IV. APPELLATE COSTS

Burch argues that we should decline to impose appellate costs in her case. We agree.

Under RCW 10.73.160(1), we have broad discretion whether to grant or deny appellate costs to the prevailing party. *State v. Nolan*, 141 Wn.2d 620, 626, 8 P.3d 300 (2000). We retain discretion to determine appellate costs after the decision terminating review. RAP 14.1(a). Burch requests that we exercise that discretion to waive her appellate costs.

Ability to pay is an important consideration in the discretionary imposition of appellate costs, although it is not the only relevant factor. *State v. Sinclair*, 192 Wn. App. 380, 389, 367

P.3d 612, *review denied*, 185 Wn.2d 1034 (2016). In the context of trial court legal financial

obligations (LFOs), our Supreme Court has recognized that if one meets the GR 34 standards for

indigency, courts should seriously question that person's ability to pay LFOs. *State v. Blazina*,

182 Wn.2d 827, 839, 344 P.3d 680 (2015). Once indigency is established, the RAPs establish a

presumption of continued indigency throughout review. *Sinclair*, 192 Wn. App. at 393.

Specifically, RAP 15.2(f) states that:

> [a] party and counsel for the party who has been granted an order of indigency must
> bring to the attention of the trial court any significant improvement during review
> in the financial condition of the party. The appellate court will give a party the
> benefits of an order of indigency throughout the review unless the trial court finds
> the party's financial condition has improved to the extent that the party is no longer
> indigent.

At the conclusion of trial, the court issued an order of indigency allowing Burch to seek

an appeal at public expense. In considering appellate costs, *Sinclair* held, as a general matter,

that "the imposition of costs against indigent defendants raises problems that are well

documented in *Blazina*-e.g., 'increased difficulty in reentering society, the doubtful recoupment

of money by the government, and inequities in administration.'" 192 Wn. App. at 391. With

Burch's presumed continued indigency, the imposition of appellate costs would threaten these

same evils. Therefore, following our recent decision in *State v. Grant*, No. 46734-8, 2016 WL

6649269 (Wash. Ct. App. Nov. 10, 2016), we exercise our discretion and decline to impose

appellate costs on Burch.

CONCLUSION

We hold that to convict of vehicular homicide or vehicular assault, the State need not

prove that a driver acted with ordinary negligence in the operation of a motor vehicle if it proves

that the driver was under the influence of alcohol or drugs while driving that vehicle, along with

other elements of the offense. Accordingly, the trial court correctly instructed the jury, and we

affirm Burch's convictions. We also decline to impose appellate costs.

Bjorgen, C.J.

BJORGEN, C.J.

We concur:

WORSWICK, J.

MAXA, J.