IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35868-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | OPINION PUBLISHED IN PART |
| | ) | |
| MEEGAN M. VANDERBURGH, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, C.J. — Washington law holds drunk drivers strictly liable for their misconduct. An impaired driver who kills another person is guilty of vehicular homicide regardless of whether the victim contributed to their injuries. Liability can be escaped only when an unforeseeable superseding cause breaks the causal chain between the impaired person's driving and the victim's injuries.

Meegan Vanderburgh was driving drunk when she rear-ended a pickup truck that had stopped at an intersection for pedestrians. The force of Ms. Vanderburgh's vehicle caused the pickup to lurch forward and kill one of the pedestrians. Although the pedestrian had been crossing the street illegally and may also have been impaired, this misconduct was not an unforeseeable superseding act. At most, it was simply a concurrent cause of the pedestrian's death. As such, the trial court did not err in limiting

evidence and instructions to the jury regarding the pedestrian's alleged misconduct.

Ms. Vanderburgh's judgment of conviction is affirmed.

FACTS

The facts giving rise to this case are relatively succinct. Daniel Nesdahl was driving his pickup truck westbound on Sprague Avenue in Spokane when he approached a green light at the intersection with Farr Road. It was dark and cold outside. Mr. Nesdahl was not impaired.

As he approached the intersection, Mr. Nesdahl saw two people in the crosswalk, illegally crossing Sprague Avenue against the light. One of the pedestrians was a man, walking his bicycle. The other individual was a woman, later identified as Cheryl Camyn. Both Ms. Camyn and the man were wearing dark clothing. About the same time Mr. Nesdahl noticed the pedestrians, his passenger did so as well and yelled at him to stop. Mr. Nesdahl quickly stopped short of the crosswalk.

Ms. Camyn and the male pedestrian stopped walking across the street at the same time the pickup came to a stop. The man then continued to walk his bicycle past the pickup, safely to the curb. Ms. Camyn followed, but paused in front of the pickup.

While Ms. Camyn was in front of the pickup, Meegan Vanderburgh's vehicle struck Mr. Nesdahl's pickup from behind. Ms. Vanderburgh's blood alcohol

concentration was 0.13 at the time.[1] She also had some tetrahydrocannabinol[2] in her system. The impact from Ms. Vanderburgh's vehicle pushed Mr. Nesdahl's pickup forward an entire vehicle length, thereby striking Ms. Camyn and crushing her under the pickup.

Ms. Camyn suffered blunt head, chest, abdominal and pelvic injuries. She died within 24 hours of sustaining those injuries. After her death, it was discovered Ms. Camyn had methamphetamine and other drugs in her system.

The State charged Ms. Vanderburgh with vehicular homicide by way of driving under the influence (DUI). Before and during trial, Ms. Vanderburgh sought to admit evidence from Ms. Camyn's blood toxicology report. Those requests were denied. The court reasoned that any relevance of the toxicology levels was outweighed by its potential to prejudice the trial's outcome.

The State presented testimony from a collision reconstructionist. He testified that both Ms. Camyn and Ms. Vanderburgh engaged in conduct contributing to Ms. Camyn's death. The reconstructionist explained Ms. Camyn was potentially impaired at the time of the incident and she was jaywalking at the time of impact.

---

[1] This was above the legal limit of 0.08. *See* RCW 46.61.502(1)(a).
[2] Tetrahydrocannabinol is an active component in cannabis.

The trial court denied Ms. Vanderburgh's request to have the jury instructed on the civil duties of drivers and pedestrians. The jury was instructed on the definition of superseding cause.

The jury found Ms. Vanderburgh guilty of vehicular homicide. She timely appeals.

ANALYSIS

In the published portion of this opinion, we address Ms. Vanderburgh's claims that the trial court erroneously refused to admit evidence and issue instructions relevant to the issue of superseding cause. Ms. Vanderburgh's remaining contentions are addressed in the unpublished portion of our decision.

*Alleged errors pertaining to superseding cause*

Ms. Vanderburgh contends the trial court deprived her of the constitutional right to present a defense, and committed instructional error, when it limited her ability to present evidence and instructions pertaining to superseding cause. But there is no constitutional right to present irrelevant evidence. *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010). Nor must the trial court issue jury instructions on irrelevant points of law. *See State v. Souther*, 100 Wn. App. 701, 710-11, 998 P.2d 350 (2000). As such, Ms. Vanderburgh's assignments of error turn on whether her proposed evidence and instructions were relevant to the issue of superseding cause.

4

Ms. Vanderburgh was charged with DUI vehicular homicide in violation of

RCW 46.61.520(1)(a). That provision requires the state to prove (1) the defendant

operated a motor vehicle while under the influence of intoxicating liquor or drugs,

(2) there was a proximate causal relationship between the defendant's act of driving and

the victim's injury, and (3) the victim died within three years as a proximate result of the

injury. Culpability under the DUI vehicular homicide statute does not turn on the manner

in which the defendant operated their vehicle. *State v. Rivas*, 126 Wn.2d 443, 451, 896

P.2d 57 (1995) (interpreting former RCW 46.61.520 (1991)). The defendant's driving

could have been "'flawless.'" *See id.* at 453.[3] Regardless, the law imposes absolute

liability based on intoxication. *State v. Burch*, 197 Wn. App. 382, 407, 389 P.3d 685

(2016).[4] The only limit on that liability is if the link between the defendant's driving

and the victim's injury is too attenuated to constitute proximate cause. *Id.* at 406.

---

[3] *Rivas* claimed flawless driving will rarely result in criminal liability since superseding causes will often break the causal chain between nonnegligent driving and a victim's injuries. *Rivas*, 126 Wn.2d at 453.

[4] Ms. Vanderburgh argues the Washington Supreme Court's decision in *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021), overrules this court's holding in *Burch* that DUI vehicular homicide is a strict liability offense. According to Ms. Vanderburgh, *Blake* requires reading a mens rea into the DUI vehicular homicide statute, otherwise an intoxicated driver may be held liable for passive, innocent conduct. We disagree with Ms. Vanderburgh's assessment of *Blake*. *Blake* recognized that the legislature may enact strict liability offenses "to protect the public from the harms that have come with modern

Proximate cause has two components: legal cause and actual cause. *State v. Frahm*, 193 Wn.2d 590, 596, 444 P.3d 595 (2019) (quoting *Rivas*, 126 Wn.2d at 453). The former is for the court to decide, the latter for the jury. *Id.* (quoting *Hartley v. State*, 103 Wn.2d 768, 778, 698 P.2d 77 (1985)); *Colbert v. Moomba Sports, Inc.*, 163 Wn.2d 43, 51, 176 P.3d 497 (2008).

Legal cause is not at issue here and the parties do not argue otherwise. By operating her vehicle while under the influence of intoxicants, Ms. Vanderburgh engaged in illegal conduct. The injuries attributed to her conduct were precisely the type of harm that drunk driving laws were enacted to avoid. There was no delay in time or space between Ms. Vanderburgh's illegal conduct and the injuries to Ms. Camyn. As a result, legal cause was readily established. *See Frahm*, 193 Wn.2d at 598-99. Ms. Vanderburgh's case was properly sent to the jury to assess actual cause.

---

life by putting the burden of care on those in the best position to avoid those harms." 197 Wn.2d at 179 (quoting *State v. Yishmael*, 195 Wn.2d 155, 164, 456 P.3d 1172 (2020)). However, *Blake* held that strict criminal liability cannot apply to "wholly innocent and passive nonconduct." *Id.* at 193. Contrary to Ms. Vanderburgh's assertions, drunk driving is neither innocent nor passive. Drunk driving is a crime, regardless of whether the driver causes injury or is otherwise negligent. RCW 46.61.502; s*ee also City of Bellevue v. Redlack*, 40 Wn. App. 689, 700 P.2d 363 (1985). "Moreover, the conduct in vehicular homicide by intoxication requires the choice to consume alcohol and drive, an unquestionably dangerous combination." *State v. Bash*, 130 Wn.2d 594, 611, 925 P.2d 978 (1996) (plurality opinion).

Actual cause is also known as "'but-for'" causation. *Id.* at 596 (quoting *Hartley*,

103 Wn.2d at 778). There can be more than one but-for cause of any given injury.

However, an action is not a but-for cause of an injury if it is interrupted by a separate,

intervening act. *Id.* at 600. In such circumstances, the intervening act is a superseding

cause and eliminates the causal relationship between the defendant's conduct and the

victim's injury.

The defense at trial focused on the issue of superseding cause. Utilizing WPIC

90.08,[5] the trial court provided an instruction on superseding cause. We emphasize

and enumerate portions of the instruction particularly relevant to our analysis:

> If you are satisfied beyond a reasonable doubt that the driving of the
> defendant was a proximate cause of the death, it is not a defense that the
> conduct of the deceased or another may also have been a proximate cause of
> the death.
> However, if a proximate cause of the death was a [1] new
> independent intervening act of the deceased or another which the defendant,
> in the exercise of ordinary care, *should not reasonably have anticipated as
> likely to happen*, the defendant's act is superseded by the intervening cause
> and is not a proximate cause of the death. [2] An intervening cause is an
> action that *actively operates to produce harm* to another *after the
> defendant's act* or omission has been committed or begun.
> However, if in the exercise of ordinary care, the defendant should
> reasonably have anticipated the intervening cause, that cause does not
> supersede the defendant's original act and her act is a proximate cause. It is

_____

[5] 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS:
CRIMINAL 90.08, at 278 (4th ed. 2016).

7

not necessary that the sequence of events or the particular injury be foreseeable. [3] *It is only necessary that the death fall within the general field of danger* which the defendant should have reasonably anticipated.

Clerk's Papers (CP) at 521 (emphasis added).

Even reading the evidence in the light most favorable to Ms. Vanderburgh, the facts suggesting superseding cause are weak, at best. Referring to portions of the jury instruction enumerated above:

1.    It can be reasonably anticipated that pedestrians will sometimes be in the roadway in violation of traffic laws.

2.    Any misconduct on Ms. Camyn's part occurred *before* Ms. Vanderburgh drove her vehicle into Mr. Nesdahl's pickup truck. Ms. Camyn did not do anything to actively cause self-harm *after* Ms. Vanderburgh's vehicle forcefully contributed to the causal chain of events that culminated in Ms. Camyn's death.[6]

---

[6] Contrary to the position taken by the concurrence, Ms. Vanderburgh's misconduct did not end when she first undertook the act of driving. That is when it began. Ms. Vanderburgh's illegal conduct continued from the time she started driving until her vehicle hit Mr. Nesdahl's pickup. Any misconduct by Ms. Camyn occurred before this final wrongful act. Viewing Ms. Vanderburgh's misconduct through this lens does not eliminate the possibility that a drunk driver would be able to make a strong cause for superseding causation. For example, had Mr. Nesdahl been the impaired driver instead of Ms. Vanderburgh, and been charged with vehicular homicide, he would have a strong

3.      Death or injury to pedestrians is within the general field of danger that

should be anticipated by a drunk driver.

Given the state of the evidence, the trial court did not err in limiting evidence and

instructions on the subject of superseding cause. *See State v. Perez-Cervantes*, 141 Wn.2d

468, 475-79, 6 P.3d 1160 (2000) (trial court does not abuse discretion in preventing

counsel from arguing the decedent's drug use was an alternative cause of death); *State v.*

*Meekins*, 125 Wn. App. 390, 400-01, 105 P.3d 420 (2005) (evidence not relevant if, at

best, it shows only a concurrent proximate cause); *Souther*, 100 Wn. App. at 710-11

(faulty instruction on superseding cause harmless where evidence showed, at most, a

concurrent cause).

Trial courts have considerable discretion in ruling on the admissibility of evidence

and selecting jury instructions. Under ER 403, courts may exclude evidence with low

probative value that might cause juror prejudice. Courts may similarly reject proposed

jury instructions that are potentially misleading or confusing. *See State v. Brobak*, 47 Wn.

App. 488, 492, 736 P.2d 288 (1987). Here, there was a risk Ms. Camyn's blood

---

case for superseding causation. Similarly, there would be a strong case for superseding
causation in the hypothetical situation of an impaired driver who is "safely stopped at a
traffic light when [an unimpaired] second driver collides with the first driver's vehicle,
killing the first driver's passenger." *Burch*, 197 Wn. App. at 395.

toxicology levels could have been misused as negative character evidence. In addition,

there was a valid concern the jury would confuse the issues of comparative fault and

proximate cause when only the latter is technically relevant. *See id.* at 493. We recognize

that had the trial evidence been different, the court may have been required to allow the

defense evidence and instructions. But given the low probative value of Ms. Camyn's

alleged wrongdoing, the trial court's rulings were not an abuse of discretion.

Ms. Vanderburgh's insistence on the relevance of Ms. Camyn's conduct

improperly attempts to engraft a negligence standard to RCW 46.61.520(1)(a).[7]

The ordinary law of negligence can protect an average driver from civil liability when

a plaintiff's conduct renders an accident not reasonably avoidable. *See, e.g.*, *James v.*

*Niebuhr*, 63 Wn.2d 800, 802, 389 P.2d 287 (1964). But impaired drivers do not enjoy this

protection. *See Souther*, 100 Wn. App. at 713 (contributory negligence is not a defense to

vehicular homicide). An individual choosing to operate a vehicle under the influence of

---

[7] The concurring opinion takes the same tact. The issue of whether
Ms. Vanderburgh's driving could be considered negligent is not relevant under
RCW 46.61.520(1)(a). The statute penalizes injuries caused by a drunk driver, not
injuries caused by a drunk driver who also drives negligently. If lack of negligence
were relevant, the statute would not impose strict/absolute liability as contemplated
in the 1991 amendments to RCW 46.61.520(1)(a) and our case law. *See Rivas*, 126
Wn.2d at 450-54; *Burch*, 197 Wn. App. at 399. Rather than negligence, the only
relevant consideration under RCW 46.61.520(1)(a) is causation.

drugs or alcohol assumes the risk of being criminally liable for injuries caused thereby,

regardless of other contributing circumstances. "For example, if a person suffered a

sudden heart attack while driving in a legally intoxicated state which resulted in a fatal

collision, the operator would be criminally liable." *State v. Benoit*, 650 A.2d 1230, 1233

(R.I. 1994).[8] This is so, even though an unimpaired driver would not be held responsible.[9]

The evidence in this case fails to show Ms. Camyn's conduct was particularly

relevant to the jury's assessment of whether Ms. Vanderburgh's driving proximately

caused Ms. Camyn's injuries. As such, it was entirely proper for the trial court to exclude

prejudicial evidence regarding Ms. Camyn's conduct, such as her blood toxicology levels,

and to deny Ms. Vanderburgh's request for jury instructions on the legal expectations of

drivers and pedestrians. These assignments of error therefore fail.[10]

---

[8] The Washington Supreme Court relied heavily on *Benoit* in explaining what it means for a vehicular homicide statute to impose absolute liability. *Rivas*, 126 Wn.2d at 452-53.

[9] The concurrence laments that our opinion will lead to injustice because it creates the risk that nonnegligent drunk drivers will largely be held responsible for killing or injuring others on the road. However, this appears to be the legislature's intent. A person who drives drunk takes on significant risks. One of those is criminal liability for causing the death of another.

[10] In her opening brief, Ms. Vanderburgh argued the court should have instructed the jury that the State was obliged to prove the absence of a superseding cause beyond a reasonable doubt. As Ms. Vanderburgh now concedes, this argument is foreclosed by *State v. Imokawa*, 194 Wn.2d 391, 396-403, 450 P.3d 159 (2019).

The judgment and sentence is affirmed.

The panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports, and that the remainder having no precedential value shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

## *Alleged error regarding summation*

In addition to her evidentiary and instructional challenges, Ms. Vanderburgh argues the trial court abused its discretion and deprived her of the right to present a defense by limiting summation. This claim fails as it was not preserved.

Under RAP 2.5(a), we may decline to review a legal issue raised for the first time on appeal. While constitutional errors are an exception to RAP 2.5(a), the error must be manifest. A manifest error is one that would have been recognizable and correctable at the time of trial. *State v. Grott*, 195 Wn.2d 256, 269, 458 P.3d 750 (2020) (quoting *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009)).

The record here does not provide any reason to think the trial court cut defense counsel's arguments off short. Prior to reconvening the jury for final instructions, counsel for the State asked the court how much time would be allotted for closing. The court responded, "I'm hoping that you can get done in half an hour." 6 Report of Proceedings

(RP) (Dec. 12, 2017) at 1057-58. This brief colloquy occurred immediately after the court

selected an alternate juror and shortly after the court posed a question to defense counsel.

There was no reason to think defense counsel was unaware of the time restriction. Indeed,

at the beginning of defense counsel's summation, they commented "I only have a short

time to express my views." *Id*. at 1085. After approximately 25 minutes of argument, the

court interrupted defense counsel's argument to announce counsel had five more minutes.

Counsel did not object. Instead, defense counsel made some final points and wrapped up

the argument. Counsel never proffered any record of what points they had been unable to

address due to the court's trial management rules.

Given the circumstances of this case, no constitutional error was manifest. Instead,

the trial court merely exercised its discretion to limit the time allotted for summation. This

was well within the court's prerogative. *See State v. Frost*, 160 Wn.2d 765, 768, 161 P.3d

361 (2007).

Because Ms. Vanderburgh has not shown her conviction was impacted by any

reviewable legal errors, it must be affirmed.[11]

---

[11] In addition to the aforementioned assignments of error, Ms. Vanderburgh also argues for relief under a theory of cumulative error. Because we do not find any errors, cumulative error is inapplicable.

13

*Alleged sentencing errors*

*Denial of mitigated sentence*

A standard range sentence is generally not appealable. RCW 9.94A.585(1).

An exception exists when the sentencing court commits legal error. *State v. McFarland*,

189 Wn.2d 47, 56, 399 P.3d 1106 (2017). One form of legal error is the failure to

recognize lawful authority to impose an exceptional sentence downward. *Id*.

At sentencing, the trial court denied Ms. Vanderburgh's request for an exceptional

sentence downward based on Ms. Camyn's alleged misconduct. The record does not

suggest the court committed legal error in making this decision. The court explained its

rejection of Ms. Vanderburgh's request for an exceptional sentence downward was not

justified by "the facts in this case." RP (Jan. 11, 2018) at 37. The court did not articulate

any misunderstanding of the law or misgivings about the propriety of a standard range

sentence. Given these circumstances, Ms. Vanderburgh is unable to establish a basis for

appellate review of the trial court's decision.

*Equal protection at sentencing*

For the first time on appeal, Ms. Vanderburgh argues a violation of her right to

equal protection under the law[12] because her sentence was enhanced based on a prior offense that had not been proved to the jury beyond a reasonable doubt. We review this legal question de novo. *State v. Roswell*, 165 Wn.2d 186, 192, 196 P.3d 705 (2008).

Ms. Vanderburgh recognizes the fact of a prior conviction is not something that needs to be proven to a jury prior to imposition of a sentencing enhancement. *See Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Her argument on appeal is that the legislature handles prior convictions inequitably. In some circumstances, the legislature requires prior convictions to be treated as elements and proven to a jury. In other circumstances (like here), prior convictions are merely sentencing factors that need not be resolved until the time of sentencing.

Because the legislative distinction identified by Ms. Vanderburgh is not based on a suspect classification or fundamental right, it is subject only to rational basis review. *See State v. Hirschfelder*, 170 Wn.2d 536, 550, 242 P.3d 876 (2010). Our court has previously recognized a rational distinction between defendants whose prior convictions are necessary to render their conduct criminal or felonious and those for whom a prior conviction merely elevates the maximum felony penalty. *State v. Langstead*, 155 Wn. App. 448, 456-57, 228 P.3d 799 (2010). The recidivist enhancement here was the latter

---

[12] U.S. CONST. amend. XIV, § 1; WASH. CONST. art. I, § 12.

15

sort. As such, the legislature had a rational basis for not treating it as a core element of the offense that must be proven to a jury beyond a reasonable doubt. *See id.* ("[R]ecidivists whose conduct is inherently culpable enough to incur a felony sanction are, as a group, rationally distinguishable from persons whose conduct is felonious only if preceded by a prior conviction for the same or a similar offense.").

## CONCLUSION

The judgment and sentence is affirmed.

_____, C.J.
Pennell, C.J.

I CONCUR:

_____
Lawrence-Berrey, J.

16

No. 35868-2-III

SIDDOWAY, J. (Concurring in result) — The majority chooses to address, as a matter of law, how to identify an intervening force when there is evidence in a vehicular homicide prosecution that a driver, while intoxicated, committed no negligent act. Tort law does not help us, because tort law looks to the temporal relationship between a defendant's negligent act or omission and a force that operates thereafter. Where there is no negligent act or omission, is there some other temporal benchmark we should apply as a matter of law?

The majority holds that there is, and that it is the entire period in which the defendant drives intoxicated, through the death-producing injury. Accordingly, "[a]ny misconduct by [the victim, Cheryl] Camyn occurred before this final wrongful act." Majority at 8 n.6. The result—contrary to *State v. Rivas*, 126 Wn.2d 443, 453, 896 P.2d 57 (1995), a seminal decision holding it is "unlikely" that impaired but nonnegligent driving will result in a conviction for vehicular homicide—is that a nonnegligent driver will almost always be criminally liable. The only exceptions will be a postinjury event or where the sole proximate cause of death was something other than the defendant's operation of her vehicle.

No. 35868-2-III
*State v. Vanderburgh* (concurrence in result only)

If this issue is to be decided as a matter of law, it presents an issue of legal cause.[1]

In *State v. Bauer*, 180 Wn.2d 929, 329 P.3d 67 (2014), our Supreme Court "recognized and established that as a rule, "'"legal cause" in criminal cases differs from, and is narrower than, "legal cause" in tort cases in Washington.'" *State v. Frahm*, 193 Wn.2d 590, 597, 444 P.3d 595 (2019) (quoting *Bauer*, 180 Wn.2d at 940). Legal cause "involves a determination of whether liability *should* attach" and is "dependent on mixed considerations of logic, common sense, justice, policy, and precedent." *Bauer*, 180 Wn.2d at 936 (internal quotation marks omitted) (quoting *Hartley v. State*, 103 Wn.2d 768, 779, 698 P.2d 77 (1985)). If we are going to decide as a matter of law when, in the absence of negligence, a force intervenes, we should hold that it intervenes when the force actively operates to produce harm after a driver undertakes to drive while

---

[1] The majority says that "[l]egal cause is not at issue here and the parties do not argue otherwise." Majority at 6. The benchmark from which to determine whether Ms. Camyn's conduct intervened was an issue argued in the trial court, with the State arguing that the "moment of impact" was the benchmark, while the defense argued that it was an earlier point, if not the point at which Ms. Vanderburgh undertook to drive. *See, e.g.*, Report of Proceedings at 34, 40-41; Clerk's Papers at 185, 190. The trial court declined to decide the issue as a matter of law and instructed the jury on superseding cause. The parties do not argue this point on appeal.

If "legal cause" is not argued in the briefs, it is because resolving this issue as a matter of law is raised by the majority.

2

intoxicated (as long as the driver does not (or should not) become aware of its existence while still in a position to control the situation).

I agree that Ms. Vanderburgh's conviction should be affirmed, but the majority's new standard for identifying intervening cause is legally unsupported and conflicts with decisions of our Supreme Court, prompting me to write separately.

*The only vehicular homicide "means" for which Ms. Vanderburgh was tried was operating her vehicle while under the influence of an intoxicant*

There are three means of committing vehicular homicide: when the death of any person ensues within three years as a proximate result of injury proximately caused by a driver operating a vehicle "(a) [w]hile under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502; or (b) [i]n a reckless manner; or (c) [w]ith disregard for the safety of others." RCW 46.61.520. The latter two means require the State to prove culpability greater than negligence. Operating a vehicle "in a reckless manner" means driving in a "'rash or heedless manner, indifferent to the consequences.'" *State v. Roggenkamp*, 153 Wn.2d 614, 631, 106 P.3d 196 (2005). "Disregard for the safety of others" means "an aggravated kind of negligence or carelessness, falling short of recklessness but constituting a more serious dereliction than the hundreds of minor oversights and inadvertences encompassed within the term 'negligence.'" *State v. Eike*, 72 Wn.2d 760, 765-66, 435 P.2d 680 (1967).

3

The "driving under the influence of an intoxicant" means is a strict liability crime, although the State must still prove that the conduct of the defendant was the proximate cause of the death. *Frahm*, 193 Wn.2d at 596. The State tried Ms. Vanderburgh for only the "driving under the influence of an intoxicant" means.

> *The defense presented affirmative evidence that Ms. Vanderburgh did not commit a negligent act or omission that could serve as the reference point for identifying an intervening force*

The defense presented affirmative evidence that Ms. Vanderburgh did not drive negligently. Its evidence that she was not negligent did not prevent the State from proving vehicular homicide, but it was relevant to the State's burden of proving the absence of an intervening force that operated as a superseding cause.

Where the driver of a vehicle is following another vehicle, the primary duty of avoiding a collision rests on the following driver. *Vanderhoff v. Fitzgerald*, 72 Wn.2d 103, 105-06, 431 P.2d 969 (1967). While the following driver has the primary duty of avoiding an accident, she is not necessarily guilty of negligence simply because she collides with the vehicle in front of her. *Id.* A prima facie showing of negligence may be overcome by evidence that some emergency or unusual condition not caused or contributed to by the following driver caused the collision, in which event the liability of the following driver becomes a jury question. *Id.* at 106.

The defense presented expert testimony that Ms. Vanderburgh did not drive negligently. Its accident reconstructionist, David Wells, testified that Ms. Vanderburgh

4

began hard-braking as soon as she realized Daniel Nesdahl's pickup was at a full stop.

Her antilock brake system had slowed her speed to between 6 and 12 miles an hour by

the moment of impact. Mr. Wells testified that the collision was not unreasonable or

uncharacteristic of a reasonably prudent driver. He testified that Ms. Vanderburgh was

not aware of the pedestrians in the crosswalk and had only two to four seconds to

recognize and react to what was happening. He explained:

> She was faced with a complex perception and reaction in this case because
> of the mixed signals that were happening. The green light was telling her
> go. The cars going by her were telling her go. The brake lights that were
> on for the pickup may not have rec—been recognized as a pickup truck that
> was actually slowing all the way to a stop and stopping. So she had to
> spend extra time figuring that out. The extra time she spent, all of a sudden
> when she realized that she was closing now on the pickup truck which
> would have appeared obviously stopped at that point and she goes to hit the
> brakes, it's too late. So she has time available and uses it trying to figure
> out what's going on up there because of these unusual circumstances.

Report of Proceedings (RP) at 994-95.

*Ms. Vanderburgh presented a jury question whether Ms. Camyn's conduct
was a superseding cause*

To be a superseding cause, as reflected in the pattern instruction, the cause must be

one "which the defendant, in the exercise of ordinary care, should not reasonably have

anticipated as likely to happen." 11A WASHINGTON PRACTICE: WASHINGTON PATTERN

JURY INSTRUCTIONS: CRIMINAL 90.08, at 278 (4th ed. 2016) (WPIC); *Frahm*, 193 Wn.2d

at 600-01.

A victim's negligence can be a superseding cause of death. *State v. McAllister*, 60 Wn. App. 654, 806 P.2d 772 (1991) (cited with approval in *Rivas*, 126 Wn.2d at 453), *abrogated on other grounds by Roggenkamp*, 153 Wn.2d 614. And case law elsewhere has held that while a victim's ordinary negligence is reasonably foreseeable and thus is not a superseding cause that would sever proximate causation, gross negligence or intentional misconduct on the part of a victim is not reasonably foreseeable and is sufficient to break the causal chain. *E.g.*, *People v. Feezel*, 486 Mich. 184, 195-96, 783 N.W.2d 67 (2010); *People v. Gentry*, 738 P.2d 1188, 1190 (Colo. 1987).

Washington courts have not examined whether gross negligence or intentional misconduct is *categorically* sufficient to break the causal chain. Our Supreme Court has observed that criminal acts are "often unforeseeable and thus may break the chain of causation." *Washburn v. City of Fed. Way*, 178 Wn.2d 732, 761, 310 P.3d 1275 (2013); *and see Campbell v. ITE Imperial Corp.*, 107 Wn.2d 807, 825, 733 P.2d 969 (1987) (Goodloe, J., dissenting) (An instruction on superseding cause was proper because "reasonable minds could conclude that the [public utility district]'s gross negligence . . . was not reasonably foreseeable."). "We trust juries" to make the determination whether an intervening act rises to the level of superseding cause. *Frahm*, 193 Wn.2d at 601; *see accord Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 110 Wn. App. 412, 431, 40 P.3d 1206 (2002) (whether an intervening cause is not reasonably foreseeable

6

No. 35868-2-III
*State v. Vanderburgh* (concurrence in result only)

and therefore superseding is generally a question for the jury) (citing *McCoy v. American Suzuki Motor Corp.*, 136 Wn.2d 350, 358, 961 P.2d 952 (1998)).

Regrettably, Ms. Camyn's interference with traffic was a cause of her death. The evidence was undisputed that she and her companion, John Branda, were crossing the street against the light, after dark, when the accident occurred. And Ms. Camyn's conduct was even more unpredictable than Mr. Branda's act of crossing against the light. Mr. Nesdahl's passenger, Tricia Raddas, provided a statement to Jeffrey Welton, the sheriff's detective and collision reconstructionist assigned to the case, a few days after the accident. In his report, the detective recounted what she said then about Ms. Camyn's conduct in the crosswalk:

> Raddas also remembered the pedestrians screaming and being profane at them after they stopped. She remembered hearing something to the effect of "Hey, Fuck You" from both the male and female. She remembered she and Nesdahl looking at each other and stating things like, "Why are they screaming at us?" She was confused by this since the pedestrians were the ones in the wrong.

Clerk's Papers at 146.

In his opening statement, defense counsel previewed the evidence he expected to present during trial:

> [A]s Mr. Nesdahl stopped, the two pedestrians—and Mr. Branda was walking with a bicycle and testified he was walking side by side with Ms. Camyn, that when they came to a stop, the pedestrians stopped and started yelling profanities at [Mr. Nesdahl and his passenger], as if they were at fault for slamming to a stop on a green light to let them go. Mr. Branda continued across the truck, which is six feet wide. We'll get to the

7

calculations.  He needed about 1.2 seconds to walk across it.  But Mr. Camyn didn't—Ms. Camyn didn't.

RP at 188.  Even Detective Welton testified that he concluded that Ms. Camyn was a proximate cause of her own death for three reasons: *being* in the crosswalk, *her conduct* in the crosswalk, and her potential impairment.

The evidence did not come in as effectively for the defense as it had hoped, as defense counsel conceded in closing argument.  Detective Welton's report of what Ms. Raddas told him a few days after the accident was not admissible, and Ms. Raddas was more forgiving of the pedestrians' conduct at trial, describing their yelling as "them, you know, trying to get our attention."  RP at 932.  She did concede that her recollection of events would have been better closer in time to the accident.  And the defense re-called Detective Welton to testify to Ms. Raddas's more critical description of the pedestrians' conduct when she provided her earlier statement.

Defense expert Wells testified that Ms. Camyn's failure or refusal to cross the street in a timely manner was a major contributing cause of the accident.  Detective Welton had testified that the crosswalk was 72 feet long, curb to curb, and Ms. Camyn was in front of the truck, having traveled a distance of 60 feet, when she was struck.  (Mr. Branda, of course, had traveled the full distance.)  The detective had testified that the average walking speed for a woman Ms. Camyn's age is five feet per second.  Defense expert Wells testified that the light cycle at the intersection afforded Mr. Branda and Ms.

8

Camyn 24 seconds between the time they received the "walk" signal and the point at

which the westbound traffic against which they were crossing would get a green light.

Moreover, the evidence suggested that the light had been green for westbound traffic for

approximately eight seconds when the collision occurred. Accordingly, 32 seconds after

she would have received the "walk" signal, Ms. Camyn was still blocking traffic,

standing at a point she should have been able to reach in 12 seconds.

> *There is no reasoned basis for the majority's holding, and it is*
> *irreconcilable with a number of published Washington cases*

A driver's intoxicated operation of a vehicle does not proximately cause a death if

an intervening force is a superseding cause. *Rivas*, 126 Wn.2d at 453. Washington

criminal case law has relied on a definition of "intervening force" drawn from tort law.

Under tort law, an intervening force is "a 'force that actively operates to produce harm to

another after the actor's act or omission has been committed.'" *Frahm*, 193 Wn.2d at

600 (quoting *Klein v. Pyrodyne Corp.*, 117 Wn.2d 1, 17 n.7, 810 P.2d 917, 817 P.2d 1359

(1991) (citing, in turn, RESTATEMENT (SECOND) OF TORTS § 441(1) (AM. LAW INST.

1965))). In tort law, the relevant act or omission is the defendant's "negligent act or

omission." RESTATEMENT § 441(1).

When a driver is prosecuted for committing the "reckless" or "disregard for

safety" means of committing vehicular homicide, the State relies on the act or omission it

contends was more culpable than negligence as the benchmark for determining whether a

force intervenes. As a result, Washington decisions dealing with prosecution for those means of committing vehicular homicide are not helpful if we hope to determine, as a matter of law, the benchmark for identifying an intervening cause in the absence of negligence on the part of the defendant.

The majority's holding that we look at the entire period in which the defendant operates a vehicle while intoxicated, and most relevantly to the moment of the death-producing injury, would make sense if the law required a causal connection between the defendant's intoxicated condition and the death-producing injury. It is well settled that the law does not require that connection, however. *Rivas*, 126 Wn.2d at 451. What is required instead is a causal connection between the defendant's operation of a motor vehicle and the victim's death. While this creates a strict liability crime, the State is required to prove beyond a reasonable doubt that a defendant's operation of a motor vehicle in violation of RCW 46.61.520 proximately caused the victim's death. This inherently means disproving the existence of a superseding cause. *State v. Imokawa*, 194 Wn.2d 391, 402, 450 P.3d 159 (2019).

Since there is no evidence-based reason for the majority's holding that a force can only intervene in causing death if it occurs[2] after an intoxicated nonnegligent driver

---

[2] The majority's approach fails to consider that an intervening force does not need to *occur* after a defendant's act, it has to *operate* after the defendant's act. *Klein*, 117 Wn.2d at 17 n.7 (citing RESTATEMENT § 441(1)). *Klein*, a case to which criminal law looks for a definition of superseding cause and intervening force, involved injuries to

10

inflicts a death-producing injury, it reflects a value judgment of whether liability should attach and therefore an issue of legal cause.

For an impaired driver who is not negligent, considerations of logic, common sense, justice, policy and precedent favor treating the point after which a force can intervene as the point at which the impaired driver makes the decision to drive.  I offer two reasons for this conclusion.  The first is that this approach is consistent with the outcome of a number of reported Washington decisions.  The second is that it is consistent with *Rivas*'s observation that an impaired but nonnegligent driver should be *more* likely, not less likely, to establish a superseding cause than a driver who is reckless or who engages in the aggravated negligence that is in disregard for the safety of others.

If we treat Ms. Vanderburgh's undertaking to drive while impaired as starting the time line, it is consistent with *State v. Morgan*, 123 Wn. App. 810, 99 P.3d 411 (2004). In that case, while driving home following a day of skiing and too much wine, Morgan

---

spectators resulting after Pyrodyne set up and discharged fireworks, an activity that the Supreme Court found subjected Pyrodyne to strict liability.  *Id.* at 10.  Pyrodyne claimed the fireworks' aerial shells were defective and their negligent manufacture was an intervening cause of injury.  The Supreme Court explained that although the allegedly negligent manufacture of the shells occurred before Pyrodyne's fireworks display, their manufacture could be an intervening force if "it actively operated to produce harm only after the aerial shells had been ignited."  *Id*.

In this case, the jury might have found, given its instructions, that Ms. Vanderburgh's act was her too-late recognition that Mr. Nesdahl's truck was fully stopped, and that Ms. Camyn's refusal to proceed to the curb, although beginning before that act, operated to produce harm to herself thereafter.

11

struck an oncoming car, killing its driver. He explained after the accident that he was temporarily blinded by glaring sunlight upon cresting a hill. This court held that "if the jury had found sufficient evidence to prove that blinding sunlight caused the accident, it could not have convicted Morgan because the State would not have proved the proximate cause element of the crime." *Id.* at 818. Under the majority's analysis, being blinded by sunlight while driving could not have been a superseding cause because it could not have been an intervening force: the death-producing injury occurred during, not after, Morgan's intoxicated driving.

If we treat Ms. Vanderburgh's undertaking to drive impaired as starting the time line, it is also consistent with well-settled Washington law that while contributory negligence is not a defense to vehicular homicide, evidence of the victim's negligence can be material to whether the defendant's conduct was a superseding cause. *State v. Judge*, 100 Wn.2d 706, 718, 675 P.2d 219 (1984) (citing cases). This appears to be the law in other states as well. *See* 1 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 6.5(c) at 692-93 (3d ed. 2018).[3] The majority's concept of continuous misconduct means

---

[3] *Also, see, e.g.*, *Allen v. State*, 2002 WY 48, ¶ 42, 43 P.3d 551, 566 (Wyo. 2002) ("[A] victim's actions may be considered whenever those actions have a bearing . . . in determining whether the defendant's wrongful conduct was the proximate cause of a victim's death.") (footnote omitted); *Gentry*, 738 P.2d at 1190 (A victim's gross negligence, being unforeseeable, is an intervening cause in a vehicular homicide case and the jury should be so instructed.); *State v. Crace*, 289 N.W.2d 54, 60 (Minn. 1979) (It is "well settled" that the victim's negligence is relevant to the question of whether a defendant's negligence was the proximate cause of the victim's injury.); *Wren v. State*,

that no negligent conduct on the part of a victim that precedes his or her injury could ever be a superseding cause.

The majority's approach means that unlike drivers who are reckless or engage in aggravated negligence, nonnegligent drivers will never be able to demonstrate any intervening force that occurs before the death-producing injury, which is irreconcilable with *Rivas*'s observation that the nonnegligent drivers are unlikely to be criminally liable. Defending its approach against this charge, the majority offers an example of an impaired driver who could make a strong case for superseding cause: the impaired driver who is safely stopped at a traffic light when a second driver collides with her vehicle, either killing her passenger or causing her vehicle to lurch forward and kill a pedestrian.

---

577 P.2d 235, 238 (Alaska 1978) ("Negligence of the deceased may . . . be considered with reference to the issue of whether the defendant's culpable negligence was the proximate cause of death."); *State v. Diamond*, 16 N.J. Super. App. Div. 26, 33, 83 A.2d 799 (1951) ("While contributory negligence of the deceased is not a defense in criminal actions, the conduct of the deceased may be material to the extent that it bears upon the proximate or actual cause of the death."); *People v. Phillips*, 131 Mich. App. 486, 492, 346 N.W.2d 344 (1984) (In prosecution for negligent homicide, any contributory negligence should be considered by the jury so that it may properly assess whether the defendant's negligence was the proximate cause of the victim's death.); *State v. Trcka*, 20 Kan. App. 2d 84, 88, 884 P.2d 434 (1994) (While contributory negligence is not a defense to a prosecution for vehicular homicide, it is a circumstance to be considered in order to determine whether defendant's conduct was the proximate cause of the victim's death.); *Penix v. Commonwealth*, 313 Ky. 587, 590-91, 233 S.W.2d 89 (1950) (Contributory negligence is not a defense to a charge of negligent homicide though evidence of such negligence is competent as bearing on the question of the defendant's negligence.); *Hewlett v. State*, 607 So. 2d 1097 (Miss. 1992) (Negligence of the deceased may be considered on the issue of whether the accused's conduct was the proximate cause of a vehicular homicide.).

Majority at 8 n.6. But in such cases, the first driver would not be criminally liable because her conduct would not be a proximate cause at all—the sole proximate cause of the resulting death would be the action of the second driver. *Cf. Snohomish County Pub. Transp. Benefit Area Corp. v. FirstGroup Am., Inc.*, 173 Wn.2d 829, 863-64, 271 P.3d 850 (2012) (Stephens, J., dissenting) (bus caught between two rear-end accidents "was not a proximate cause of the accident," it "simply had the misfortune of being in the wrong place at the wrong time"); *State v. Meekins*, 125 Wn. App. 390, 397, 105 P.3d 420 (2005) (holding that an impaired defendant's conduct "is not a proximate cause if some other cause was the sole cause").

Better examples show that the majority's continuous misconduct analysis *does* virtually eliminate a superseding cause defense for a nonnegligent driver. Under the majority's analysis, the following impaired but nonnegligent drivers will be criminally liable because their misconduct is ongoing when they are a cause-in-fact of a death: a driver who nonnegligently strikes and kills a child who bolts into the street from between parked cars; a driver who nonnegligently slams on her brakes to avoid striking a child who bolts into the street only to be struck from behind, resulting in the death of her passenger; and a nonnegligent driver who rounds the corner on a mountain road and is unable to avoid hitting a felled tree on the roadway, resulting in the death of a passenger.

To repeat, the evidence that Ms. Vanderburgh was not negligent did not prevent the State from proving she was guilty of vehicular homicide. But it was consequential in

14

determining whether there was an intervening force that the State must prove was not a superseding cause. Ms. Vanderburgh was entitled to have the issue of superseding cause submitted to the jury.

> *The trial court did not abuse its discretion in excluding the toxicology report or refusing to give Ms. Vanderburgh's proposed instructions on rules of the road*

Since the trial court properly instructed the jury on superseding cause, it should have admitted all evidence relevant to Ms. Camyn's conduct unless the evidence was inadmissible for some other reason. I disagree with the majority that if a defense theory is viable but "weak," a court may exclude evidence relevant to the "weak" theory.

The trial court did, however, have a tenable basis for ruling that the toxicology report would not establish that drugs had an effect, or its extent, on Ms. Vanderburgh's coordination, reaction time, or decision-making ability immediately before the collision. It did not abuse its discretion in concluding that the report was more prejudicial than probative. Relevant evidence of Ms. Camyn's conduct *was* admitted.

I also agree with the State that Ms. Vanderburgh's proposed instructions on rules of the road were incomplete and were inadequate for reasons explained in *State v. Brobak*, 47 Wn. App. 448, 493-94, 736 P.2d 288 (1987). It is also anomalous to have jurors assess an issue of "foreseeability" with the assistance of extensive instruction on rules of the road—rules that would not have been in a criminal defendant's mind in that detail at the time of her offense conduct.

15

No. 35868-2-III
*State v. Vanderburgh* (concurrence in result only)


I have no disagreement with the majority's resolution of the issues addressed in the unpublished portion of the opinion. I otherwise concur only in the result, for the reasons stated.


_____
Siddoway, J.